THE ATLANTA CONSTRUCTION COMPANY, Claimant, *v.* THE STATE OF NEW YORK.   No. 14962.

(State of New York, Court of Claims, April, 1918.)

Contracts — language of — duty of state when entering into contract with its citizens — highways — damages — mistake.

It is the duty of the state in entering into contracts with its citizens to set a standard which for fairness, justice, equity, honesty and plain frank statement of its purpose, without subterfuge or circumlocution, shall be beyond all criticism as being in any way possible of deception.

Written upon the plans or maps expressly made a part of a contract between claimant and the state for the building of a county highway was a clause that the stone for a particular item of the contract relating to a certain number of cubic yards of stone for the sub-bottom course should be local material, the source of supply being one-half of a mile north of a certain point of the road to be improved. The claimant, when making its bid, considering that said clause was not only a statement

State of New York, Court of Claims, April, 1918.   [Vol. 103.

of fact but a direction and command from the state to take the stone from the place indicated, figured the cost of hauling the stone from that place to the road, but, as it could not be there obtained, claimant had to draw stone a considerable distance farther, to its extra cost and damage, and, upon the hearing of a claim for the amount thereof, it appeared that claimant could not get the stone from the place indicated by the contract because the person in possession of the stone and who told claimant that he could have it at the going price had only a life estate in the premises.   *Held,* that as matter of fact the language of the contract actually misled claimant.

While there was a mutual mistake, the claimant having been led by the certain order, direction and statement of the state, the latter will not be permitted to evade responsibility for its own mistake and justice requires that the state should make good to claimant his loss.

CLAIM for damages filed by the Atlanta Construction Company for the building of a county highway known as Dresden-Penn Yan county highway No. 1205.

Herbert A. Heminway, for claimant.

Merton E. Lewis, attorney-general, by Henry P. Nevins, deputy attorney-general, for state.

ACKERSON, P. J.   This is a claim against the state of New York for $3,951.99, filed by the Atlanta Construction Company August 19, 1914. This company made a contract with the state of New York for the building of a county highway known as the Dresden-Penn Yan county highway No. 1205. The work was completed by the claimant and claimant has been paid in full for said work, except that it insists that it is entitled to the sum above mentioned.

Item No. 40 in said contract relates to 7,380 cubic yards of stone for the sub-bottom course. Written on

the plans or maps which were expressly made a part of the contract is the following: " The stone for item 40 shall be local material. The source of supply being one-half mile north of station 88 plus 00 and 133 plus 00, on road to be improved." The contractor when it made up its bid considered this clause a positive statement of fact by the state upon which it absolutely relied, and also further considered it as a direction and command from the state that the stone should be taken from the place there indicated. In making up its bid, it therefore figured the cost of hauling the stone from that place to the road. When it came to build the road, it could not obtain the stone from that place and had to draw the stone a considerable distance farther than it figured on when making up its bid, to its extra cost and damage in the said sum of $3,951.99.

This provision above quoted in reference to item 40 being a part of the construction plan and the construction plan being a part of the contract, we believe that this became a part of the contract itself, and not merely information for bidders, nor an estimate or opinion or representation leading up to the making of the contract. We are fully aware that these contracts are so drawn as to excuse the state from almost any statement or representation which it may make in reference to matters similar to the one here involved, but we believe that there should be a limit placed on this method of leading a contractor astray to his damage and loss. There is no reason why the English language, when used by officials of the state, should not have the same meaning and significance which is attached to it when used in contracts between individuals. There was no ambiguity in any way about this statement. It was positive, direct and peremptory. The contractor might well be excused from relying upon it as it did, if an excuse were necessary.

It was an unqualified statement that the contractor must use certain material from a certain place in the construction of the road.  In this case the contractor did not rely upon this positive and unqualified statement of the state which we think it had a right to do, but it went further and investigated for itself and was told by the one in possession of the stone that it could have it at the going price, but thereafter when it came to build the road it found that it could not get the stone because the one in possession thereof had simply a life estate in the premises, so that here it seems to us the state is defeated even on its own contention that the contractor should make the investigation for itself.  It did do so, and such investigation confirmed the statement made by the state.  It was therefore a mutual mistake of the state and of the contractor, but one into which the contractor was led by the certain order, direction and statement of the state.  The state under such circumstances can not be permitted to evade the responsibility for its own mistake in compelling a contractor to make a bid based upon the cost of delivering material which could not be obtained.

The state is called upon, in contracting with its citizens, to set a standard which for fairness, justice, equity, honesty and plain, frank statement of its purpose, without subterfuge or circumlocution, shall be beyond all criticism as being in any way possible of deception.  We find as a fact that the language of the contract actually misled the contractor.  The contract was perfectly susceptible of the construction the contractor gave it.  It was deceived by this act of the state to its loss.  Justice requires that the state should make it good.  The same principle for which we are here contending is well set forth in the case of *Hollerbach* v. *United States,* 233 U. S. 165.  The facts in that case were somewhat different from those in the

case at bar, but the general principle is the same. That was a contract with similar provisions to the one here involved, and yet the Supreme Court of the United States held that the government was bound by its positive statement of fact, notwithstanding the contract required the contractor to investigate the scene of the contract and satisfy himself of the statements in the contract from his own investigation. The court there said: " A Government contract should be interpreted as are contracts between individuals, with a view to ascertaining the intention of the parties and to give it effect accordingly. * * * In paragraph 33 the specifications spoke with *certainty* as to a part of the conditions to be encountered by the claimants," and that is what we are here contending, that this statement of the state was a certain positive statement and left no room upon the face of it for any doubt by anybody that conditions did not exist just as there stated. The court further said: " We think this positive statement of the specifications must be taken as true and binding upon the Government, and that upon it rather than upon the claimants must fall the loss resulting from such mistaken representations. We think it would be going quite too far to interpret the general language of the other paragraphs as requiring independent investigation of facts which the specifications furnished by the Government as a basis of the contract left in no doubt. If the Government wished to leave the matter open to the independent investigation of the claimants it might easily have omitted the specification as to the character of the filling back of the dam. In its positive assertion of the nature of this much of the work it made a representation upon which the claimants had a right to rely without an investigation to prove its falsity." We think this language applies with great force to the

State of New York, Court of Claims, April, 1918. [Vol. 103.

facts in this case. It works no hardship upon the state, but simply holds the state to its word which, in all fairness, it ought to be willing to stand by.

The language of Judge Earl, in *Danolds* v. *State of New York,* 89 N. Y. 44, may well be quoted as sustaining our decision here. He said: " The sovereign can contract and has very many occasions to do so; it can build canals and public buildings, and engage in public works, and in carrying forward its projects it makes use of the instrumentalities which individuals use for the same purposes. It must be governed by the same rules of common honesty and justice which bind individuals. It is for its interest that its contracts should be binding upon all the parties thereto. If it can at pleasure violate or abandon its contracts, in the absence of any stipulation authorizing it to do so, there will be such uncertainty and risk attending all its contracts that it will go into the market for work and materials at a great disadvantage. As was well said by Judge Allen, in *People* v. *Stephens* (71 N. Y. 549) : ' There is not one law for the sovereign and another for the subject; but, when the sovereign engages in business and the conduct of business enterprises, and contracts with individuals, * * * whenever the contract, in any form, comes before the courts, the rights and obligations of the contracting parties must be adjusted upon the same principles as if both contracting parties were private persons. Both stand upon equality before the law, and the sovereign is merged in the dealer, contractor and suitor.''

WEBB and CUNNINGHAM, JJ., concur.

Ordered accordingly.