YOUNG FEHLHABER PILE CO., INC., Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 25028.)

Court of Claims, September 23. 1941.

*Rosenberg & Rosenberg* [*Louis Rosenberg* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Joseph I. Butler, Assistant Attorney-General*, of counsel], for the defendant.

DYE, J.   The problem presented by this claim is to decide whether the underwater elevations shown on a contour map which constituted a part of the contract document amounted to a material representation on which the contractor was entitled to rely in making its bid, and if so, did the contractor waive its right to damages for breach when it signed the contract which contained the following clause:

" 3. The Contractor further agrees that he is fully informed regarding all of the conditions affecting the work to be done and labor and materials to be furnished for the completion of this contract, and that his information was secured by personal investigation and research and not from the estimates of the State Department of Public Works, Division of Highways; and that he will make no claim against the State by reason of estimates, tests or representations of any officer or agent of the State."

The contract was signed about April 22, 1936.   It related to the reconstruction of a section of the public highway known as the Babylon State Highway No. 5259, Bridge No. 1 and approaches. It was financed by Federal aid and was designated as RC 3640. The route crossed a tide water inlet by means of two old style wooden bridges in a straight line, separated by a short intervening dirt road.   Adjoining the bridges and the intervening road to the south there was located the town dock.   These structures separated the navigable portion of the inlet known as Carll creek on the southerly side, and a tide water pond on the north.   At the site, Carll creek was about 150 feet in width at the bulkheads and widened out to the south.

The reconstruction work contemplated the removal of the existing structures, including the intervening dirt road, to be replaced by the erection of a new concrete bridge and a new concrete dock, the new structures to be of the sizes and to have walls and footings of concrete, placed on the creek bottom at the elevations indicated in the plans.   The performance of the work required a dirt cofferdam operation or dike to the south and to the north so that the foundations might be laid in the dry.   The locations of the cofferdams were not indicated, but good engineering practice required the southerly dike to be constructed of dirt so placed that the sides of the dike when completed would be at an angle of forty-five

degrees from the base, the northerly toe of which was to be placed as near the southerly base of the concrete foundations for the new structure as was physically possible and still leave requisite space needed to make the concrete pour.

The plans submitted to bidders for proposal contained a sheet showing underwater elevations at the tide water inlet, contours being shown at one-foot intervals and with identifying numerals to indicate the elevation. The same plans were attached to the contract and were specifically included as a part of the contract document. The contractor had received instructions to bidders with accompanying plans and specifications about seven days prior to the submission of the bids. The instructions contained substantially the same directions as to inspection of site as above quoted. (¶ 3, *supra.*) The contractor examined the plans and saw the sheet with the contour data relating to the creek bottom elevations. It visited the site and found that the wooden dock covered part of the area and to test the elevations of soil beneath would have necessitated the removal of planking and timbers, and due to the width and depth of the creek and the greenish opacity of the tide water, the bottom could not be seen and to take soundings required the use of marine equipment.

The contractor did neither. It made only a visual inspection of the site and relied on the elevations indicated on the State's contour map for his underwater information. The contractor computed and submitted its bid, was awarded the contract and directed to start work May 15, 1936, which it undertook to do. Upon arrival at the job site, however, the State engineer required that the underwater elevations be checked as he questioned their accuracy and despite the contractor's demur as to the necessity therefor, in view of the contour map, soundings were taken by the State engineer assisted by the contractor's engineer and some helpers. The taking of the soundings and computation of data consumed the greater part of a week and it then developed that the actual creek bottom elevations were lower than shown on the plan by two to four and one-half feet or more. The fact then came out that the State had made up the plans from data obtained in a survey taken in 1930, some six years before, and that in the interval the town of Babylon had dredged Carll creek. It must also be noted as a significant detail that the State engineer's office for this district was also located in Babylon during all of the period under discussion. When apprised of the actual underwater situation, the contractor protested and was directed to proceed, and if not satisfied, " he could go to the Court of Claims," a favorite destination for the consignment of protesting contractors.

The lowered depth required a larger, wider, more complicated and more costly cofferdam operation, which had the effect of delaying the completion date of the work, and it is for this damage that the contractor seeks relief.

The State admits the facts, but claims immunity under the contract provision relating to the inspection of site and that " he will make no claim against the State by reason of the estimates, tests or representations of any officer or agent of the State."

This defense, however, is not available to one who creates the situation upon which the contractor relies to his detriment. (*Bridger* v. *Goldsmith*, 143 N. Y. 424; *McGovern* v. *City of New York*, 202 App. Div. 317; affd., 235 N. Y. 275.) The nature of the physical conditions at the site was peculiarly within the knowledge of the State. Its engineers made a survey, and from the data thus obtained, prepared detailed contour maps which indicated the creek bottom elevations at one-foot intervals and with identifying numerical markings. No words of qualification, explanation or limitation called attention to the fact that the actual conditions were or might be otherwise than as represented. Six years elapsed — a long time indeed — between the taking of a survey and the preparation of the plans based thereon.

The detailed contour map furnished by the State constituted a material representation, which was relied upon by the bidder (and had in fact been relied upon by the State in its preparation of plans and engineer's preliminary estimates) and such misrepresentation takes on the legal complexion of active fraud. The fact that the dredging of Carll creek channel was done by the Babylon authorities is not available as a defense to the State. It represented to the bidder and successful contractor a clearly defined physical condition and must be bound by the consequences, however costly and unpleasant they may be. It has been said with great force and sound philosophy that " The State is called upon, in contracting with its citizens, to set a standard which for fairness, justice, equity, honesty and plain, frank statement of its purpose, without subterfuge or circumlocution, shall be beyond all criticism as being in any way possible of deception." (*Atlanta Construction Co.* v. *State of New York*, 103 Misc. 233.)

Ignorance of facts peculiarly within its knowledge cannot excuse the State any more than were it an individual and it must be bound by the same rules applicable to an individual in similar circumstances.

It is a well-established doctrine that a party to a contract cannot by a misrepresentation of a material fact induce the other party to enter into it to his damage, and then protect himself from the legal

effect of such misrepresentation by inserting in the contract a clause to the effect that " He is not to be held liable for the misrepresentation which induced the other party to enter into the contract. The effect of misrepresentation and fraud cannot be thus easily avoided. If it could be the implied covenant of good faith and fair dealing existing in every contract would cease to exist." (*Jackson* v. *State of New York,* 210 App. Div. 115; affd., 241 N. Y. 563; citing *Brassil* v. *Maryland Casually Co.,* 210 id. 235.)

In the face of such facts, it becomes immaterial whether the bidder had time to take soundings or not, and its omission to do so does not deprive it of its remedy for the wrong committed by the State. (*Christie* v. *United States,* 237 U. S. 234; *Cauldwell-Wingate Co.* v. *State of New York,* 276 N Y. 365.) It is only where uncertainty is indicated that the contractor is bound to satisfy himself as to existing conditions or suffer the penalty imposed by the contract terms for such failure. (*Foundation Co.* v. *State of New York,* 233 N. Y. 177; *Faber* v. *City of New York,* 222 id. 255; *Weston* v. *State of New York,* 262 id. 46.)

The contractor becomes entitled to damages as and for a breach of contract to an amount representing the fair and reasonable cost thereof, together with such additional amount as represents the fair and reasonable cost of machinery and equipment, and further, the State having breached its contract, the deduction made by it for engineering supervision during the delay period was improper and should be restored to the contractor.

RYAN, J., concurs; GREENBERG, J., dissents, in an opinion.

GREENBERG, J. (dissenting). I dissent from the decision about to be made.

On April 22, 1936, the claimant entered into a contract with the State to reconstruct a section of the Babylon Village State Highway No. 5299, Bridge No. 1, and approaches. The contract work consisted of (1) the removal of the existing bridges over a tidal water inlet and the construction of a new concrete bridge in place of same; (2) the removal of an existing town dock and the construction of a new concrete dock and retaining wall. The contractor agreed to complete the work in accordance with the terms of the contract, the specifications and the contract plans, which were component parts of the contract. In the performance of the contract work, the contractor was required to erect cofferdams both north and south of the bridge site so that the area, in which the new construction was to be built, could be dewatered; the location and type of the cofferdams were left entirely with the contractor. The cofferdams, pumping, bailing and draining, pro-

vided for in the contract, were to be done for a lump sum bid by the claimant. The plans, in addition to giving the location and the details of the new construction, contained contour lines with numerals appearing thereon, indicating the elevations of the creek bottom in and over which the new structures, provided for in the contract, were to be constructed. These contours and creek bottom elevations were placed on the plans in accordance with information then in possession of the State.

Claimant's president and chief engineer, upon noticing the published advertisements for bids, secured a copy of the contract plans and specifications about a week previous to the submission of its bid. Claimant's bid was made to the State after it had examined the plans and specifications and after a visit had been made to the contract site, at which time nothing was done regarding the checking of the depth of the water, and no soundings were taken by the claimant. It was not until after the contract was let and the work about to be commenced, that upon the direction of the State's employee, soundings were taken and it was then ascertained that the creek bottom elevations, as indicated upon the plans, were incorrect.

The claimant now seeks to recover the additional cost of construction, resulting from the State's misrepresentation of the creek bottom elevations; it claims to have sustained damage because of the breach of warranty on the part of the State with respect to the creek bottom elevations and because it was directed and compelled to perform work in the erection of a cofferdam, and the pumping, bailing, draining, etc., incident to such cofferdam, to a far greater extent than it had estimated or contemplated in the submission of its bid upon the contract.

There is no doubt that the creek bottom elevations, indicated on the plans constituted a representation and that the contract was made upon the understanding and with the supposition that the bottom of the creek in and over which the claimant was to perform its work, was substantially as therein indicated. However, under the terms of the contract and the specifications and the instructions to bidders, which are part of said agreement, the claimant had agreed that it had satisfied itself, by its own personal investigation and research regarding all the conditions affecting the work to be done, and had agreed to debar itself from pleading misunderstanding or deception because of estimates of quantities, character, location or other conditions surrounding the work.

Under these circumstances, if the claimant contractor had a reasonable opportunity of discovering the falsity of the statements or representations contained on the plans with respect to the creek

bottom elevations, it cannot hold the State liable for having misrepresented the true facts. The courts have heretofore, and in no uncertain terms, laid down the rule of law applicable to the facts in the instant case.

"A contract and specifications may contain representations as to existing physical conditions. If so, a bidder may rely upon them, even though it be provided that he shall satisfy himself by personal inspection and investigation as to their truth, *where because of time or situation such investigation would be unavailing. (Faber* v. *City of New York*, 222 N. Y. 255.)" (*Foundation Co.* v. *State of New York*, 233 N. Y. 177, 184, 185.) (Italics supplied.)

" We have no doubt that it is such a representation. Clearly, the reference to this plan contained in all the papers before us was sufficient to show that the contract was made by both parties upon the understanding and with the supposition that the bedrock was substantially as therein indicated. It would be wholly inequitable to hold that under such circumstances *where the contractor had no reasonable opportunity of discovering the truth*, and where the other party had made the examination and asked for bids upon plans showing the results of such examination, the latter can be heard to say that it is not responsible, should those plans wholly misrepresent the facts. (*Langley* v. *Rouss*, 185 N. Y. 201.)" (*Faber* v. *City of New York*, 222 N. Y. 255, 260.) (Italics supplied.)

" Where the amount of work to be performed and materials to be furnished under and by a contract *depend upon conditions that cannot be ascertained by inspection and bidders are not required and given an opportunity to make such investigations as are necessary to satisfy themselves as to the amount of work to be done* and materials to be furnished and the contract, plans and specifications include representations as to existing conditions which are inserted for the purpose of enabling contractors to determine what bid to make for the proposed work and materials, a recovery may be had as for a breach of contract for the damages caused if it shall turn out that the representations were erroneous." (*Langley* v. *Rouss*, 185 N. Y. 201, 209.) (Italics supplied.)

The time available to the claimant and the situation at the contract site were such that an investigation of the existing physical conditions would have divulged to the claimant the true facts. The physical conditions were such that the quantity of work to be performed and the materials to be furnished under the contract, could have been ascertained by an inspection. Furthermore, the claimant herein had a reasonable opportunity of discovering the true existing facts in accordance with the rule laid down in the cases of *Langley* v. *Rouss* and *Faber* v. *City of New York (supra).*

The plans were in possession of claimant and its chief engineer a week previous to the submission of the bid, during which period the duty of ascertainment of the true conditions existing at the site, which included the elevations of the creek bottom, was upon the claimant. The State cannot be charged with liability, because there is no question that the claimant had sufficient time within which to investigate these conditions. The testimony is that after the contract was let, two of claimant's employees together with two of the State's employees, with a level and a rod, took the elevations of the bottom of the creek along a line across the inlet, consuming a period varying from an hour to a half or three-quarters of a day, as estimated by claimant's witness, and that after the taking of same, and on the same day, made computations which revealed to claimant's engineer that the elevations of the creek bottom were lower than those shown on the contours on the plans, which were made a part of the contract. If that information was ascertainable after the contract was made, it was equally so prior thereto, and particularly during the week previous to claimant's bidding on the contract.

Claimant's investigation and inspection of the site were inadequate. Under a reasonable construction of the provisions of the contract providing for a personal inspection and research by the contractor with respect to the conditions at the site of the contract work, something more than a visual inspection of the site was intended. Merely going over the ground upon which the work was to be done, or inspecting the site by viewing it, would be of no avail and was not the intendment or the understanding of the parties to the contract. If anything, the investigation referred to was intended to be in conjunction with the plans and the data contained thereon, and such investigation as an engineer would make in order to determine the correctness of any representation or warranties as to the existing conditions.

The other item of the claim is to recover amounts deducted for engineering charges because of the delay by the claimant in the completion of the contract. The contract date of completion was extended from September 1, 1936, to April 17, 1937, in accordance with the provision of paragraph 8 of the contract. The delay in the completion of the contract was not caused by the State, and the deduction made for such charges was, therefore, proper and in accordance with the agreement entered into between the parties, and, accordingly, the claimant cannot recover therefor.

It is for these reasons that I dissent and vote to dismiss the claim herein.