Louis G. Bruhn, J.
This is an application on behalf of the petitioner for an order adjudicating the respondent in contempt of an order previously issued by this court or in the alternative setting aside the respondent’s action of rejecting all of the bid proposals submitted as being arbitrary and capricious.
To better understand the atmosphere or posture of the present application requires a history of the litigation from its inception.
Pursuant to an advertisement for public bidding the petitioner, on October 24, 1963 submitted a bid for the demolishing of certain houses and structures in the City of Syracuse in the *971 amount of $31,335 which bid was claimed to be the lowest bid and lower by over $4,000 to the next bid of $35,583; on November 9, 1963 the respondent returned the petitioner’s deposit and rejected its bid claiming it was “ informal Thereafter the petitioner inadvertently brought a proceeding in this court in Onondaga County and by stipulation of the parties an order was made by the Hon. J. Robert Lynch, Justice transferring such preceeding to a Special Term of this court held in and for the County of Albany on December 13, 1963 and ordering further 1 ‘ that the respondent herein be and he hereby is stayed from taking any further action in reference to the award of the contract involved until the hearing upon this application is had in the Supreme Court of Albany, and a copy of the notice of entry of the order deciding the application is served upon the applicant.” (Apparently intended to be respondent.)
The matter was argued at Albany on December 13, 1963 and an opinion was rendered by this court on January 15,1964 which in effect directed the respondent to accept and consider the petitioner ’s bid in determining which bid should be accepted as the lowest.
Thereafter, this court signed an order dated January 22, 1964 which provided:
“ ordered, that the application of the petitioner is granted to the extent as hereinafter set forth, and it is
“ ordered further, that the determination of the respondent that the bid proposal of the petitioner was informal and the return of same as a result of such determination be and hereby is annulled as being arbitrary and capricious, and it is
1 ‘ ordered further, that the respondent accept the bid proposal made by the petitioner on the 24th day of October, 1963, as a formal bid proposal and consider same in determining the lowest responsible bid proposal in making the award of its contract.” (Italics supplied.)
On January 29,1964 a copy of such order was served upon the Attorney-General and on February 6, 1964 the attorney for the petitioner received a letter signed by Henry A. Cohen, Director, by direction of the respondent, which stated:
‘ ‘ After due consideration of the proposals that were received for the above identified project and in view of the requirements at the site as have been recently developed, Superintendent J. B. McMorran, has determined to reject all of said proposals, for the best interest of the State.” (Italics supplied.)
*972 The petitioner thereafter instituted this proceeding on or about February 14, 1964 returnable at an Albany County Special Term of this court on February 28,1964; thereafter this. court received a phone call from Mr. Burke, Assistant Attorney-General requesting an adjournment to March 6,1964 because of the -Commissioner’s alleged absence from the State; by letter of February 19, 1964 a request was made by the same Mr. Burke of petitioner’s attorney and such consent was given by him to the adjourned date of March 6.
In the meantime on February 25 the petitioner’s attorney learned that the identical work was being advertised for bids as part of a larger contract to be let on March 5, 1964, the day before the requested and agreed adjourned date; that on February 26, 1964 at the request of the petitioner’s attorney the consent to the adjournment to March 6 was rescinded and the matter was heard on the date originally set, to wit, February 28, 1964.
At no time prior to the return date had Mr. Burke or anyone connected with the Department of Public Works advised either the court or the petitioner’s attorney of the course which was being pursued to readvertise for bids on the same project in spite of the pending proceeding to punish the Commissioner for contempt of this court’s order of January 22, 1964.
That the Commissioner’s underlings were planning to insure that the petitioner’s bid might not be considered even before tin's court made its decision is borne out by the fact that F. I. C. 64-7, the proposal for the contracts to be let as of March 6, was apparently prepared well in advance of this court’s determination and order of January 22,1964.
Such conclusion is borne out by the size of the proposal (consisting of some 335 pages) prepared in anticipation of such bidding, by the fact that such proposal on page “ 1 ” bears the date of January 8, 1964 and from page 19 on contains the identical buildings, unit, quantity and price as contained in the proposal of October, 1963.
On page 5 of the latest proposal appears the item “76 — Maint. & Prot. of Traffic (Req. B) ” with an asterisk which provides “ Omitted by intent. Bidder must state the price in the space provided for this item in the Proposal Form ”.
This particular item has special significance since it differs from the original proposal which bore the inscription only of “ Omitted by intent ” and is consistent with the argument advanced by the respondent to this court that the petitioner’s bid should be rejected as informal because of the failure to indicate a figure for the item.
*973 Curiously and as further indication that efforts were in progress to thwart the petitioner’s proceeding is the fact that on page 93 of the latest proposal there appears this caveat:
‘ ‘ ITEM 120 DX DISPOSAL OE BUILDINGS
“ The specifications for Item 120 D shall apply except as modified. The Contractor is advised that Demolition Items 120 DX 1 through 120 DX 83 may be deleted from this contract either prior to or after the award. Legal proceedings concerning these items are in progress. No definite date can be established as to when these legal questions will be resolved and the property made available to the contractor.”
It should be pointed out at this point that these preparations were being formulated and formalized in spite of the injunctive provisions of Justice Lynch that the respondent be stayed from taking any further action in reference to the award of the contract involving such demolition until service of a copy of the order to be entered after the hearing of December 13.
Such conclusion is further fortified by the letter of February 3, 1964 signed by Henry A. Cohen, which states:
“ The memorandum decision by Justice Bruhn, ‘ In the Matter of the Petition of Bielec Trucking & Lumber Co., Inc.’ etc., concentrates on the footnote, ‘ omitted by intent, ’ on page 2 of the proposal which was referred to by an asterisk in the block for 76-M, maintenance of traffic. Steps had already been taken here through John J. Raymond, assistant Deputy Chief Engineer, whereby ‘ omitted by intent ’ will no longer be used for the purpose intended. A copy of my memorandum of November 1,1963, to Mr. Raymond is attached.
“ While other bidders for the same work of demolition did write in a price for 76-M notwithstanding the footnote and the implications alleged by the petitioner Bielec, there is no intention to debate the reasoning of the memorandum decision. Also I suggest that no appeal be taken, because the facts disclosed in the Article 78 proceeding would cloud our previous determination. That determination was based solely on the omission of the bidder to state anything in item 76-M of his proposal.

“ Mr. E. B. Hughes, you, Mr. John Raymond and I have discussed this situation several times, both before the memorandum decision and since then, to arrive at a conclusion that will be for the best interests of the State, and with due considerations of all of the related proposals in the letting of October 24,1963.

“You know that FIC 64r-7 in the letting of March 5 1964 is for highway construction project and the unit items include the demolition of the same buildings that were in the letting of *974 October 24, 1963. However, there is an express optional provision in the construction specifications of FIG 64-7 which permit DPW to exclude the demolition work.
‘ ‘ Experience over a considerable period of time has demonstrated that when a project reaches the stage of complete design and is ready for bidding, the unit price for demolition is frequently less than if the demolition were undertaken earlier by another contractor. Vandalism has influenced separate contracts for demolition well in advance of construction operations. Also, the highway contractor has the responsibility of the demolition work, and if he employs a subcontractor, the highway contractor cannot blame the State for delay in the demolition work.

“Justice Bruhn has ordered ‘consideration rather than to direct acceptance’ of the Bielec proposal.

“ I suggest to you that our thinking on the subject over a period of time, and the facts as they now exist recommend that the related proposals in the letting of October 24,1963, should be rejected now, for the best interests of the State.” (Italics supplied.)
The apparent preconceived design of the respondent’s underlings to prevent the Bielec bid for being properly considered seems to be further borne out by the affidavit of Henry A. Cohen, sworn to February 27, 1964.
In such affidavit Mr. Cohen relates that “Following the first conference hereinabove mentioned, a second conference was scheduled between the same conferees and at that time the following considerations and determinations were made as the basis for such recommendation to the Superintendent of Public Works, viz:
“ (1) the conferees hereinabove named accepted as guide lines the decision of Justice Bruhn and his memorandum to review and to consider all of the proposals, which, according to the aforesaid memorandum involved a proposal form which was inconsistent and ‘ had created the atmosphere of confusion if such exists.’ ” (Italics supplied.)
Such quote is taken out of context and to attempt to use it as an argument for rejection of all bids is a further demonstration of the indifference of Mr. Cohen to the order of this court.
To appreciate the callousness of such argument we need only refer to page 4 of this court’s memorandum which stated: “ The language of the oft-quoted and oft-cited case of Atlanta Const. Co. v. State of New York (103 Misc. 233) seems particularly appropriate to these facts. In that case the court, at page 236, *975 stated: ‘ The state is called upon, in contracting with its citizens, to set a standard which for fairness, justice, equity, honesty and plain, frank statements of its purpose, without subterfuge or circumlocution, shall be beyond all criticism as being in any way possible of deception. ’ Certainly in keeping with such a standard the petitioner’s bid should not be summarily returned after the State had created the atmosphere of confusion if such exists.” (Italics supplied.)
Bather than an argument for rejection it should be obvious to the most unwilling that it was intended instead as an argument for acceptance rather than rejection.
Mr. Cohen then went on in his affidavit: “ (2) among the four proposals that were received, the first and second low bids did not state any bid prices for Item 76 M — Maintenance and Protection of Traffic, but the next two bids did contain a bid price for this item, and, an award of the contract to Bielec could well generate a lawsuit by the third bidder whose proposal was complete in all respects including Item 76 M. The conferees regarded No. 3 of the bidders as constituting a potential and valid threat to an award to Bielec, whose bid could be challenged by the third bidder on the grounds that, aside from the said ‘ atmosphere of confusion the bid was incomplete and certainly not in conformance with the long established standards of the New York State Department of Public Works with respect to similar situations. The conferees also considered the situation with regard to the buildings which are to be demolished for the highway construction project and learned from reports from the Syracuse district office of the Department that the uncommon vandalism had already reduced the value of salvageable material from the buildings, the point being that even if an award were to be made to Bielec after the decision by Justice Bruhn, Bielec could well claim that conditions at the site had changed which would permit him to sue the State in the Court of Claims.”
The juvenile logic of this argument certainly demonstrates further the determination of the so-called conferees to have their own way in this matter regardless of court orders or otherwise.
In the first place they concede that the first and second low bids did not state any bid prices for Item 76 M and yet they returned only the Bielec bid as ‘ ‘ informal ’ ’ and were concerned, or so they say, with No. 3 bidder as constituting a potential and valid threat of a lawsuit.
If such was honest thinking and not “ hand in cocky jar ” rationalization, all of the bids should have been immediately rejected and rebid then and there and not after a decision which was not to their liking or expectation. __
*976 The argument might have some plausibility if the petitioner had been the only bidder failing to include a bid price for the disputed item but since a second bidder had done the same thing it strains one’s logic to say that bidder No. 3 constituted any threat whatever.
The inadequacy of such logic is demonstrated by the very fact of the present litigation which was a much more serious threat than any from No. 3.
The second phase of the argument is equally as unpersuasive particularly since the new bid proposals contain the identical estimates as did the October proposal.
If conditions had since changed as radically and perceptibly as Mr. Cohen and his conferees would have us now believe certainly the present estimated cost of demolition should be different in the new proposal.
The apparent rationalization of a preconceived design becomes even more pointed when we reflect on the language in the notice of rejection of the proposals that the. rejection was in the best interest of the State “ in vieiv of the requirements at the site as have been recently developed.” (Italics supplied.)
The argument contained in Mr. Cohen’s.letter of February 3, 1964 seems equally without merit because if it is now feasible to have the responsibility for the demolition, with the highway contractor rather than with a separate contractor it would seem that the separate October bidding should never have been let at all.
To wait until after this court’s determination certainly lelids an aroma of suspicion, to the conduct of the State employees responsible.
Particularly is that so -when we realize that during the very time this matter was under consideration, plans were afoot to readvertise for the very same work.
Certainly one can rightfully question such conduct as indicating a preconceived intent not to be necessarily bound by any determination of this court concerning the then pending application unless such determination were favorable.,
Such conduct alone would likewise indicate an arbitrary and capricious consideration of the bids rather than a full and proper one prior to arriving at a decision to reject.
Even the Commissioner’s reasons contained in paragraph “ Eleventh ” of his answer are lacking in conviction and somewhat at odds with logic to arrive at the conclusion he did.
In that paragraph he said:
“ That in the judgment of the Eespondent herein and the judgment of his departmental subordinates having charge of *977 such matters, it was deemed in the best interest of the State to reject all bids for three reasons:
“ 1. the confusion and inconsistency in the specifications pointed out by the Court in the Court’s opinion, and
‘ ‘ 2. the more orderly processing of the work under the main contract in order to obviate questions of coordination of work between different contractors and possible lengthy damage suits for failure to timely furnish the main contractor with the site, and
‘ ‘ 3. the probability of litigation resulting from an award of the original demolition contract. ’ ’
Bather than find confusion and inconsistency this court found just the opposite but commented that if it existed it was there because of the State’s action and not because of the petitioner’s.
The fallacy of reason No. 2 is contained in the statement of the proposals at page 93 thereof that “ No definite date can be \ established as to when these legal questions will be resolved and the property made available to the Contractor.” (Italics supplied.)
Equally without merit is reason No. 3 when we realize this is said at a time when the respondent is up to his neck in litigation by the petitioner.
This court fully expected that its order of January 22, 1964 was denfiite enough to indicate a holding requiring a letting of the contract within the four bids submitted with a subsequent review, if necessary, to determine whether or not such letting was arbitrary and capricious.
At that time the court felt that no direction should have been made compelling the acceptance of the petitioner’s bid.
However, since it now appears that the petitioner’s bid was the lowest and since there is nothing to suggest it is not responsible this court now feels it would be arbitrary and capricious for the respondent not to grant the bid to the petitioner.
The justification for such conclusion is found in the recent case of Matter of Caruci v. Bulan, (41 Mise 2d 859, p. 862):
‘1 In deciding whether a determination is arbitrary or capricious or an abuse of discretion, the test is not what the court thinks or what the board should have done but whether or not there is a responsible or plausible basis for their actions. (Matter of Kaelber, 281 App. Div. 980.) When there is no substantial evidence to justify the decision of the board, then the court is warranted in setting it aside. (Matter of Reynolds v. Triborough Bridge ,& Tunnel Auth., 276 App. Div. 388.)
* *. Implicit in determining the lowest responsible bidder is the exercise of administrative discretion; otherwise, *978 public officials are reduced to merely making arithmetical computations to determine the lowest dollar amount. (Matter of Limitone v. Galgamo, 21 Misc 2d 376.) That the petitioners are the lowest dollar bidder is unquestioned. The matter for determination is whether or not respondents abused their discretion in failing to award them the contract.
“It appears to the court that respondents have abused that discretion. V
While perhaps the same conclusion should have been reached by this court on the previous application it would now appear certain that such conclusion is justified.
Therefore, in view of the foregoing the respondent is required to award the contract to the petitioner pursuant to its October, 1963 bid and he is therefore restrained from further advertising for bids covering the same work and/or to recall such work from any contract which may have awarded it.
This court can appreciate the magnitude of the Commissioner’s responsibilities and the fact that he must rely to a large degree on the integrity of his inferiors. This court also feels that to get a job done at any cost may be financially expedient but to do it by circumventing our lawful processes can only lead to anarchy and chaos.
Since the instant application seeks to punish the Commissioner only for contempt of this court’s order of January 22, 1964 and not of Justice Lynch’s earlier order and since the proof to bring about such result against a public official must be clear and definite this court feels compassionate enough to resolve any willful violation of such order in his favor and conclude that no contempt by the Commissioner has been sufficiently established.