TBG, INC., Plaintiff,

v.

Richard A. BENDIS, et al., Defendants.

Civ. A. No. 89–2423–EEO.

United States District Court,
D. Kansas.

Feb. 17, 1994.

**1460**

J.D. Lysaught, Mustain, Higgins, Kolich, Lysaught & Tomasic, Kansas City, KS, Herbert E. Milstein, Lisa M. Mezzetti, and Daniel S. Sommers, Cohen, Milstein, Hausfeld & Toll, Washington, DC, for TBG, Inc. and George A. Bridgmon.

Bruce Keplinger, John Benge, Michael G. Norris and Michael B. Lowe, Richard G. Norris, Payne & Jones, Chtd., Overland Park, KS, for Richard A. Bendis.

Karen J. Halbrook and John R. Cleary, Husch & Eppenberger, Kansas City, MO, for W. Terrance Schreier.

Anthony F. Rupp, Shughart, Thomson & Kilroy, Overland Park, KS, John M. Kilroy, R. Lawrence Ward, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, and Emmett E. Eagan, Jr., Ernst & Young, Cleveland, OH, for Ernst & Whinney.

J.D. Lysaught, Mustain, Higgins, Kolich, Lysaught & Tomasic, Kansas City, KS, Herbert E. Milstein, Lisa M. Mezzetti, Daniel S. Sommers, Cohen, Milstein, Hausfeld & Toll, Washington, DC, and Martin E. Karlinsky, Scheffler, Karlinsky & Stein, New York City, for Richard S. Masinton and Continental Healthcare Systems, Inc.

J.D. Lysaught, Mustain, Higgins, Kolich, Lysaught & Tomasic, Kansas City, KS, M. Michael Gill, Tamara Wilson Setser, Julia A. Riggle, Hillix, Brewer, Hoffhaus, Whittaker & Wright, Kansas City, MO, Herbert E. Milstein, Lisa M. Mezzetti and Daniel S. Sommers, Cohen, Milstein, Hausfeld & Toll, Washington, DC, for Paul R. Billington.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on motions to reconsider the court's Memorandum and Order dated December 21, 1993, 841 F.Supp. 1538, by defendant Richard Bendis (Doc. # 963), Terrance Schreier (Doc. # 965), and defendant Ernst and Whinney (Doc. # 966). For the reasons set forth below, defendants Bendis and Schreier's motions will be granted and defendant Ernst's motion will be denied.

The decision of whether to grant or deny a motion for reconsideration is committed to the court's discretion. *See Hancock v. City of Oklahoma City,* 857 F.2d 1394, 1395 (10th Cir.1988) (district court's decision on motion for reconsideration is reviewed under abuse of discretion standard). It is well established that a motion for reconsideration is the opportunity for the court to correct manifest errors of law or fact and to review newly discovered evidence or to review a prior decision when there has been a change in the law. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). Appropriate circumstances for a motion to reconsider are where the court has obviously misapprehended a party's position on the facts or the law, or the court has mistakenly decided issues outside of those the parties presented for determination. *Anderson v. United Auto Workers,* 738 F.Supp. 441, 442 (D.Kan.1990); *Refrigeration Sales Co. v. Mitchell–Jackson, Inc.,* 605 F.Supp. 6, 7 (N.D.Ill.1983). A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider. *Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992); *Renfro v. City of Emporia,* 732 F.Supp. 1116, 1117

(D.Kan.1990) (quoting *Paramount Pictures Corp. v. Video Broadcasting Sys., Inc.,* No. 89–1412–C, slip op. at 2 (D.Kan., *unpublished,* Dec. 15, 1989)).[1]

*Bendis and Schreier's Motions for Reconsideration*

Defendants Bendis and Schreier suggest that the court reconsider the portion of our prior order which discussed the contractual limitation on liability of Paragraph 9 of their respective stock purchase agreements with TBG. Defendants do not submit any new authority, but argue that the court misconstrued and/or misapplied New York law, which governs interpretation of the agreements, as set forth in *Soviero Bros. Contracting Corp. v. New York,* 286 A.D. 435, 142 N.Y.S.2d 508 (1955), *Agristor Leasing–II v. Pangburn,* 162 A.D.2d 960, 557 N.Y.S.2d 183 (1990), and *Grumman Allied Ind., Inc. v. Rohr Ind., Inc.,* 748 F.2d 729 (2d Cir.1984).

Defendants argue that TBG may not affirm part of the contracts without affirming them in their entirety. In *Soviero Bros.,* the court stated,

> [N]o authority in this state has been found which would permit a contractor to continue—by conscious and deliberate election—with the performance of his contract, thereby affirming it, reap its profits, and thereafter sue beyond the period of limitation contained in that contract for damages *based upon fraudulent inducement.*

142 N.Y.S.2d at 514 (emphasis added). Defendants also quote from *Agristor Leasing–II,* "a party may not avoid an agreement on grounds of fraud if, after acquiring knowledge of the fraud, he affirms the contract by accepting a benefit under it." 557 N.Y.S.2d at 185. From this, defendants conclude that because TBG has chosen to affirm the contracts and sue for damages, instead of rescinding based on fraudulent inducement, TBG is bound by the damage limitation provision in Paragraph 9 of the agreements.

■ Bendis argues that *Edwards v. North American Van Lines,* 129 A.D.2d 869, 513 N.Y.S.2d 895, 897 (1987) (an arbitration clause in a storage contract was enforceable absent evidence of fraud in the inducement), a case cited in our prior order, supports his position because the court held that the plaintiff had failed to make a prima facie showing of fraud and enforced the arbitration clause in the contract. *See id.* The *Edwards* court held that the provision requiring arbitration was not procured by fraud because there were no allegations that the arbitration clause was hidden in the fine print or otherwise concealed from the plaintiff by the defendant and the plaintiff's failure to read the contract did not relieve him from application of the arbitration provision. *Id.; see also Grumman Allied Ind., Inc. v. Rohr Ind., Inc.,* 748 F.2d 729 (2d Cir.1984) (the "procured by fraud" exception only applies to a situation where the party against whom the disclaimer is asserted was "entirely unaware of the existence of the disclaimer—for example, where the disclaimer is inserted surreptitiously into the final draft of the contract"). In the instant case, TBG admits it was aware of and negotiated the limitation on liability in Paragraph 9. Consequently, the limitation provision in the contract may not be avoided on the grounds of fraud in the inducement.

Even if TBG could allege facts entitling it to rescind the contract for fraud, the rule against partial rescission of a contract mandates enforcement of the limitation with regard to TBG's claims on the contract. *See Soviero,* 142 N.Y.S.2d at 514; *Agristor Leasing–II,* 557 N.Y.S.2d at 185. We, therefore, conclude that the liability limitation of Paragraph 9 will be enforced to limit defendants' liability on TBG's claims for breach of contract and indemnity.

■ However, the liability limitation will not be similarly enforceable to shelter defendants from liability for the consequences of their own intentional wrongdoing. In *Novak,* the court considered the enforceability of a

---

1. The court further notes that under the "law of the case doctrine," once issues are decided by the court, those issues should not be relitigated or reconsidered unless they are clearly erroneous or unless some manifest injustice has been imposed. *Renfro,* 732 F.Supp. at 1117. This doc-trine is based on public policy favoring an end to litigation and encouraging dispute resolution by preventing continued re-argument of decided issues. *See Todd Shipyards Corp. v. Auto Transp., S.A.,* 763 F.2d 745, 750 (5th Cir.1985); *Major v. Benton,* 647 F.2d 110, 112 (10th Cir.1981).

contractual limitation disallowing damages for delay "from any cause" and declined to enforce the provision as a matter of law at the summary judgment stage. 480 N.Y.S.2d at 409–12.

In considering a shortened notice period in the contract, the *Novak* court contrasted *I.C.C. Metals, Inc. v. Municipal Warehouse Co.*, 50 N.Y.2d 657, 431 N.Y.S.2d 372, 375, 409 N.E.2d 849, 852 (1980) (holding that the parties' contractual limitation on damages was not applicable to an action for conversion,[2] and permitted the bailor to recover the full value of the bailed goods) with *Soviero: Soviero* involved nonintentional "innocent" or "reckless" misrepresentations, while *I.C.C. Metals* involved allegations of intentional wrongdoing. *Id.* In *Novak*, the court noted,

> The policy announced in *Soviero* is that of allowing a municipal contracting agency to protect itself from state claims and thereby preserve the scarce funds in the city coffers. The policy of *I.C.C. Metals* ... is to prevent a party from disclaiming liability for its own intentional wrongdoing, regardless of whether such disclaimer is direct or indirect.

*Novak*, 480 N.Y.S.2d at 407. The court referred to Judge Rabin's dissent in *Soviero*, which distinguished between an action on the contract and an independent action for misrepresentation, as having "risen to the fore." *Id.*

In *Kalisch–Jarcho v. City of New York*, the New York Court of Appeals, considering an exculpatory agreement which limited the defendant's liability for damages caused by defendant's intentional construction delays, stated,

> An exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances. Under announced public policy, it will not apply to exemption of willful or grossly negligent acts ... An

exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing.

58 N.Y.2d 377, 461 N.Y.S.2d 746, 749–50, 448 N.E.2d 413, 416–17 (1983); *see also Jackson v. State*, 210 A.D. 115, 205 N.Y.S. 658, 661–62 (1924) (distinguishing between liability limitations for negligence and those for intentional misrepresentations and stating, "A contract to take a thing with all faults does not mean that it is to be taken with all frauds."); *Young Fehlhaber Pile Co. v. State*, 177 Misc. 204, 30 N.Y.S.2d 192, 194–95 (N.Y.Ct.Cl.1941) (refusing to enforce contractual limitation on damages where it was alleged that the defendant intentionally misrepresented the physical conditions of the construction site notwithstanding contractual provision requiring plaintiff to conduct full inspection of the site prior to accepting the contract).

Guided by the language of *Kalisch* and *I.C.C. Metals*, we believe that the New York Court of Appeals would refuse to enforce the limitations provisions in the stock purchase agreements to the extent they would serve to shelter defendants from liability for the full amount of damages caused by their own fraudulent acts. This means that the limitation on liability will not shield defendants' liability on TBG's section 10(b) and Rule 10b–5 claim (requiring scienter), controlling person claim under section 20(a) (requiring absence of good faith and acts by the defendants to induce the direct violation), aider and abettor liability claim (requiring knowledge of the violation), and common law fraud claim.

Schreier argues that because Paragraph 9 refers to "any" loss, "any" breach, "any" document, and "any" certificate, TBG "considered the possibility or potential of a fraudulent breach of representations and warranties and having considered that possibility

---

**2.** Notably, in upholding the arbitration clause in *Edwards*, the court was considering an action for conversion. *Edwards*, 513 N.Y.S.2d at 896. We believe that a clause requiring arbitration is fundamentally distinguishable from a liability limiting provision in that an arbitration provision is simply a forum selection clause. Such a provision is analogous to a forum selection clause in

which the parties agree to litigate disputes in a given court. Nothing inherent in the arbitration process itself limits the defendant's liability for the full amount of damages caused by intentional wrongdoing. Thus, an arbitration clause would not violate the public policy against contractual limitations on liability for fraud.

then agreed to limit its remedy in the event such a fraudulent breach came to pass." Thus, Schreier urges, TBG should not now be permitted to escape a bargained-for contractual limitation into which TBG entered freely and voluntarily. TBG disputes that, in executing the stock purchase agreements, TBG considered the possibility of fraudulent conduct by Bendis or Schreier and then freely entered into Paragraph 9 with the intent that it would limit recovery of damages for fraudulent acts by Bendis and Schreier.

The record shows that the provisions in the stock purchase agreements were negotiated and bargained for by TBG and the defendants. At the time TBG entered into the stock purchase agreements, TBG's officers and agents, specifically, Richard Cutler and Nicole Bergman, understood that the impact of the limitation provision in Paragraph 9 was to set a ceiling on defendants' potential liability. However, it is not clear that Cutler and Bergman thought the limitation would apply to liability for fraud. The court does not share Schreier's view that the repetitive reference to "any" throughout Paragraph 9 establishes, as a matter of law, that TBG considered the possibility of fraud and intended that the limitation provision would apply to a claim for fraud. Moreover, even if Schreier could establish that TBG intended the liability limitation in Paragraph 9 to apply to claims for fraud, the public policy discussed above mandates against enforcement of such a provision to shield defendants from liability for intentional wrongdoing. Thus, summary judgment is not appropriate.

■ Our reference to "misrepresentation" in our prior order was aimed only at intentional acts, not negligent misrepresentations. Accordingly, to the extent that our prior order could be read to exclude TBG's negligent misrepresentation claims from the ambit of the liability limiting provision of Paragraph 9, we now clarify our holding. TBG's claims grounded in simple negligence are subject to the liability limits set forth in Paragraph 9 of the stock purchase agreements.

*Ernst and Whinney's Motion for Reconsideration*

Defendant Ernst and Whinney seeks reconsideration on the issue of justifiable reliance. Ernst suggests that the court failed to consider the extent to which TBG had access to and controlled the information in question and that the court misconstrued the record with regard to Masinton's disclosure of the existence of the Lee's Summit Demonstration Agreement to Ernst and Whinney. The court has carefully reviewed the evidence submitted by Ernst in support of its motion for reconsideration. For the most part, Ernst simply reasserts the factual contentions submitted in its original motion for summary judgment. We find no manifest errors in the facts considered in reaching our original decision and Ernst has not presented newly discovered evidence warranting reconsideration.

Ernst contends that because Masinton testified that he did not tell Randy Olson that Bendis and Schreier instructed him to conceal the existence of the Lee's Summit Demonstration Agreement from Price Waterhouse, Ernst did not know that the agreement had not been disclosed to TBG. Regardless of whether Masinton told Olson that Bendis and Schreier had instructed him not to disclose the agreement, the record supports TBG's contention that Ernst and Whinney knew about the existence of the demonstration agreement and its impact on revenues and did not disclose this information to TBG.

Contrary to Ernst's assertion that Richard Cutler admitted having knowledge of the Lee's Summit Demonstration Agreement, TBG maintains that even if Cutler knew a demonstration agreement existed, he was not aware of a written agreement requiring CHSI to pay for demonstration privileges or the negative impact on earnings of such an agreement. The court went into great detail in its original order to thoroughly review and discuss Richard Cutler's role and knowledge. We need not rehash that discussion here. Suffice it to say, that we may not adopt Ernst's characterization of the record in deciding a motion for summary judgment, but

must draw all factual inferences in favor of TBG.

Ernst makes much of the court's discussion of whether Nicole Bergman actually reviewed the Lee's Summit Demonstration Agreement. Ernst misinterprets the import of our discussion on this point—that discussion was germane only on the question of whether TBG had knowledge or access to knowledge of the existence of the agreement to pay a demonstration fee. The relevant inquiry was whether TBG knew or had access to knowledge that the demonstration agreement existed, regardless of whether TBG availed itself of the opportunity to review it.

In an attempt to establish that Nicole Bergman reviewed (and thus knew about) the document, Ernst pointed to Ms. Bergman's deposition testimony about her review of the CHSI contracts listed in the Merger Agreement. Ms. Bergman testified that she conducted a review of the contracts listed on the Merger Agreement schedules and, because the Lee's Summit Agreement was included, she must have reviewed it. Ms. Bergman had no independent recollection of having done so. The court held that Ms. Bergman's testimony was inconclusive to establish that the Lee's Summit Agreement was fully and completely disclosed, especially in light of the evidence in the record that the agreement to pay Lee's Summit Hospital a substantial demonstration fee was embodied in a separate document. Because we do not share Ernst's view that the record establishes, as a matter of law, that TBG had access to all of the documentation of CHSI's demonstration agreement with Lee's Summit Hospital, our prior order denying summary judgment will stand.

We also cannot determine, as a matter of law, that TBG would have proceeded with the acquisition even if it had known about CHSI's obligation to pay Lee's Summit Hospital as a part of the demonstration arrangement or other matters in Buseman's memorandum. In light of all of the other knowledge TBG possessed about CHSI when it elected to proceed with the acquisition, we find Ernst's argument that TBG would have gone forward even with such knowledge

quite persuasive. TBG maintains that it would not have acquired CHSI if it had known. It is not for the court to resolve this factual dispute on summary judgment.

In conclusion, although, as stated in our original order, we have serious questions about the relative merit of TBG's position when compared with the evidence presented by Ernst on the issue of reliance, the court may not weigh the evidence in deciding a motion for summary judgment. Although the court is not impressed with the strength of the points raised by TBG on the issue of justifiable reliance, we cannot discount them entirely in considering a motion for summary judgment. Accordingly, Ernst's motion for reconsideration will be denied and our prior order denying summary judgment will stand.

IT IS THEREFORE ORDERED that defendant Richard Bendis's motion for reconsideration (Doc. # 963) is granted.

IT IS FURTHER ORDERED that defendant Richard Bendis's motion for summary judgment on Paragraph 9 of the stock purchase agreement (Doc. # 877) is granted as it relates to TBG's claims for breach of contract, indemnity, and negligent misrepresentation.

IT IS FURTHER ORDERED that defendant Terrance Schreier's motion for reconsideration (Doc. # 965) is granted.

IT IS FURTHER ORDERED that defendant Terrance Schreier's motion for summary judgment on Counts II and XI (Doc. # 887) is granted as it relates to TBG's claims for breach of contract, indemnity, and negligent misrepresentation.

IT IS FURTHER ORDERED that defendant Ernst and Whinney's motion for reconsideration (Doc. # 966) is denied.