SOVIERO BROS. CONTRACTING CORP., Respondent, *v.* CITY OF NEW YORK, Appellant.

First Department, June 28, 1955.

*Anthony Curreri* of counsel (*Seymour B. Quel* with him on the brief; *Peter Campbell Brown, Corporation Counsel,* attorney), for appellant.

*Nelson Rosenbaum* for respondent.

BREITEL, J. Plaintiff is a contractor who undertook in written agreements with the City of New York to construct two sewers at separate locations and to make the necessary excavations. It sues for damages based on misrepresentations in the city's specifications as to the site of one of the sewer excavations and the physical condition of the subsurface area of the other. The city sets up as an affirmative defense the time limitation contained in the contracts for the bringing of suits. That provision requires that actions be commenced within one year after the filing in the office of the comptroller of the final certificate. Concededly, the one-year period has long expired. It is also conceded that the true physical facts were discovered by the contractor more than a year (indeed, more than three years) prior to the beginning of this action.

The issue is whether the city may interpose and rest upon the time limitation as a defense in an action charging it with " fraudulent " misrepresentation as to material facts, in reliance upon which the contractor entered into its engagements, and which engagements the contractor has never elected to rescind.

The question arises on a motion for summary judgment made by the defendant under rule 113 of the Rules of Civil Practice. The City Court Special Term granted the motion, but the order was reversed by a divided court in the Appellate Term.

The complaint is framed in law and demands damages in almost the classical form for actual fraud. The affidavits submitted on the motion, on the other hand, reveal that reliance is not had upon the traditional five elements of fraud. On the contrary, the gravamen is misrepresentation, innocently or recklessly made by the city, with respect to material facts, at a time when, somewhere in the files of the city, there were documents and maps clearly revealing the true facts, which facts were never disclosed in advance to the contractor. Since, however, the action is based on damages at law for fraudulent inducement, it is in affirmance of the contracts. This being so, the city may avail itself of the short period of limitation contained in the written agreements with the contractor. Such a

contractual period of limitation is not contrary to public policy. Consequently, the order of the Appellate Term should be reversed and the order of Special Term granting judgment in favor of the city should be reinstated.

The complaint contains two causes of action: One is for damages of $3,529.44 based upon the additional expense incurred by the contractor in making one excavation at a site other than the one indicated in the specifications; and the other is for damages in the sum of $1,191.20 for additional expense incurred in removing trolley tracks and railroad ties found at the site of the other excavation, and of which the contractor was not advised at the time of the making of the agreement. The contracts, according to the final certificates, yielded a total payment to the contractor from the city of $29,699, exclusive of these claimed extras.

January 26, 1949, and October 11, 1949, were the dates for the opening of bids on the respective projects. For the first project, a final certificate was filed on November 25, 1949, and payment of the amount certified was made by the city to the contractor on December 28, 1949. On the latter date, the contractor filed a claim with the comptroller for the excess expenses, in the sum of $3,529.44, sustained at the relocated site. Various proceedings were had under this claim, including an examination of the contractor, and, on November 25, 1952, the city rejected the claim. In the second project, similar proceedings in part were had with respect to the contractor's claim, in the sum of $1,191.20, for additional expenses incurred in removing trolley tracks and railroad ties.

This action was thereafter begun on January 23, 1953, more than three years after the issuance of the final certificate for the first contract and the payment made thereunder.

It is not disputed that the first contract and its specifications called for excavation in an existing dirt area to accommodate a twelve-inch sewer. To make such an excavation it was necessary for the work to extend for a width of fourteen feet. When the contractor was ready to proceed with the work under this contract, the site for the laying of the sewer had to be changed twice because, on each occasion, it was discovered that the proposed excavation would invade the properties of abutting owners. The site finally chosen for the excavation, free from the objections of abutting owners, lay under a concrete walk. This, of course, entailed additional expense for the contractor. At the location specified in the other contract, when the work penetrated to the subsurface, there were discovered abandoned

trolley tracks and railroad ties, which again increased the expense for the contractor. The contractor protested because of the changed requirements and the additional expense, but proceeded with the work. The additional expenses were the basis for the claims filed with the comptroller in December, 1949 and May, 1950, respectively. At no time, then or since, did the contractor elect, as it might have, to rescind the contracts, nor did it bring an action to recover damages within the time limitation contained in the written agreements.

The provision contained in each agreement which imposes the time limitation reads as follows: " LIV. No action shall lie or be maintained by the Contractor, or anyone claiming under the Contractor, against The City upon any claim arising out of or based upon this contract or by reason of any act or omission or requirement of The City or its agents, unless such action shall be commenced within one year after date of filing in the office of the Comptroller of the City of New York the final certificate ". It is a standard provision in city contracts, and is evidently designed to discourage stale and fraudulent claims for " extras " against the city.

The contractor knew of the falsity of the representations before the work on one of the excavations was commenced. It had to, because at the beginning it was faced with the change of site and the need to break through concrete. With respect to the trolley tracks and railroad ties at the second excavation, it learned of the failure to warn of that condition during the progress of the work in 1949. The contractor did not rescind, but proceeded with the contracts under protest. That was its right, namely, to proceed with performance of the contracts, in affirmance thereof, and claim later the damages which resulted from the misrepresentations. Even after the work was completed, the contractor might have tried to rescind, although it had fully executed its part. At this time, however, it would be doubtful whether its opportunity to rescind was still available, since the remedy of rescission must be invoked within a reasonable time after discovery of the misrepresentation. (*Barnard* v. *Campbell*, 58 N. Y. 73, 75; 5 Williston on Contracts [Rev. ed.], § 1526.)

In any event, the contractor did not attempt to rescind and disaffirm the contracts, but filed its claims for damages with the comptroller. For over two years while these claims were pending, the contractor still made no effort to rescind. Presumably, the contractor wished to retain the profits of these contracts, and to look only to damages for the misrepresentations, rather

than to rescind, risk his profits, and be limited to damages measured by benefits conferred.

In 1953, when this action was begun, the gravamen was clearly laid in damages at law, in affirmance of the contracts, and was not based, as claimed by the contractor in its brief, upon an "executed" rescission. The complaint, as stated earlier, follows the traditional form of an action at law for damages. No rescission is asked for or claimed and no benefits received are tendered. The reason for this, of course, is rather evident. The opportunity to rescind had long been lost. Indeed, it may have been lost in the instant when the contractor elected to proceed with the contract after discovery that it was then required to break through concrete pavement at a different site instead of excavating into dirt at the specified site. (5 Williston on Contracts [Rev. ed.], § 1527; Restatement, Contracts, § 484.) Again, the contractor for good and sufficient reason may have preferred to go forward with the contracts for which it had been the successful bidder. With respect to the other contract, the discovery of the true physical facts, of course, occurred later. That would probably give the contractor a much greater latitude in determining when and whether to rescind.

Nevertheless, despite the fact that it does not even now seek rescission, the contractor would have the court treat its claims as based on an "executed" rescission, or, in the alternative, it asserts that the contracts having been induced by "fraudulent" misrepresentations, the time limitation provision is avoided as an instrument of or shield for the "fraud". Recognizing that there is no actual fraud, it urges that there is present "constructive fraud".

The contractor relies upon a well-settled line of cases which hold that one who is guilty of fraud in the making of a written agreement may not invoke a provision of that agreement which purports, directly or indirectly, to immunize himself from liability for his own fraud. (*Jackson* v. *State of New York,* 210 App. Div. 115, affd. 241 N. Y. 563; *Jandous Elec. Equipment Co.* v. *State of New York,* 158 Misc. 238; *Young Fehlhaber Pile Co.* v. *State of New York,* 177 Misc. 204, affd. 265 App. Div. 61; *Jarcho Bros.* v. *State of New York,* 179 Misc. 795; *Nordone Contr. Co.* v. *City of New York,* 295 N. Y. 985.) Each of these cases was an action for damages brought at law based upon the misrepresentations made in the inducement of the contract. The provisions involved either expressly purported to relieve the defendant from liability for misrepresentation, or required, despite any representation to the contrary, that the contractor

make and be bound by its own inspection. These cases apply a rule well recognized in law that avoids the effect of an immunity clause, the very existence of which arises only because the contract containing it was induced by fraud and which provision is *designed* to shield the fraud. A total immunity clause is bad; a limitation provision, if reasonable, is not. In truth, the rule rests not so much on the basis that the immunity provision may be avoided for fraud in the inducement of the contract, but on the principle that the provision is illegal, and therefore null, because it violates public policy. (*Bridger* v. *Goldsmith,* 143 N. Y. 424, 428; 6 Williston on Contracts [Rev. ed.], § 1751 B; 6 Corbin on Contracts, § 1516; Restatement, Contracts, § 573.) Consequently, the provision never had any life. It requires neither the existence of fraud nor rescission to destroy it. It is void in the beginning. A contractual short period of limitation, on the other hand, if reasonable, is valid and even salutary. (6 Corbin on Contracts, § 1516; Restatement, Contracts, § 573; cf. Civ. Prac. Act, § 10.) The rationale is analogous to the rule that an agreement containing a waiver of the Statute of Limitations is illegal as against public policy, whereas an agreement containing a reasonable limitation period is valid and enforcible. (*Shapley* v. *Abbott,* 42 N. Y. 443; *Brandyce* v. *Globe & Rutgers Fire Ins. Co.,* 252 N. Y. 69; *Sapinkopf* v. *Cunard S.S. Co.,* 254 N. Y. 111; *Crow Constr. Co.* v. *Carroll P. Brennan, Inc.,* 196 App. Div. 71, affd. 233 N. Y. 635; 1 Williston on Contracts [Rev. ed.], § 183.)

The contractor similarly relies on another well-settled line of cases in which plaintiff was entitled to obtain rescission, and, therefore, nullification of the contract based on fraud, although the contract provided that no representation had been made other than those contained in the written agreement. (*Bridger* v. *Goldsmith,* 143 N. Y. 424, *supra; Angerosa* v. *White Co.,* 248 App. Div. 425, affd. 275 N. Y. 524; *Ernst Iron Works* v. *Duralith Corp.,* 270 N. Y. 165.) These cases would be pertinent if plaintiff had rescinded, or if plaintiff were seeking rescission within a reasonable time after discovery of the true facts. The effect of such rescission is, of course, to nullify the entire contract — time limitations, conditions, promises, prices — all.

The fact is that no authority in this State has been found which would permit a contractor to continue — by conscious and deliberate election — with the performance of his contract, thereby affirming it, reap its profits, and thereafter sue beyond the period of limitation contained in that contract for damages based upon fraudulent inducement. Nor are we supplied with

any such authority outside the State. Cases cited by the contractor follow precisely the rules laid down in New York. (*Fay & Egan Co.* v. *Independent Lbr. Co.*, 178 Ala. 166; *Fay & Egan Co.* v. *Cohen & Bros.*, 158 Miss. 733; *Granlund* v. *Saraf*, 263 Mass. 76.) These were actions for rescission in which the entire contract was avoided for fraud, or actions in equity to enforce a lien in which the defense of fraud was interposed to avoid the entire contract. It would not be logical that the rule should be otherwise. One elects either to continue with the contract fraudulently induced or to rescind it. If one elects to continue with it, one accepts all the burdens contained in the contract as well as the benefits. (*Angerosa* v. *White Co.*, 248 App. Div. 425, affd. 275 N. Y. 524, *supra*; cf. *Brandyce* v. *Globe & Rutgers Fire Ins. Co.*, 252 N. Y. 69, 74, *supra*.)

Nor do the circumstances of the instant case suggest that the rule, as a matter of policy, should be otherwise. The City of New York, as well as other governmental units in the State, makes thousands of contracts for public works. These many contracts involve disparate, complicated and involved programs, in widespread and separated areas. Of necessity, the contract letting is handled by regiments of the army of public servants. Over the years there have been many troubles and losses, and government has sought manifold ways in which to protect the public interest. One of these ways is the contractual short period of limitation requiring action while the evidence is fresh. The incidence of error in specifications without negligence, and frequently with negligence, is high indeed. If an attenuated theory of constructive fraud could be spelled out for each of these, the salutary purpose of the contractual short period of limitation, itself designed to prevent fraudulent claims, would be frustrated.

A further aspect of this case merits attention. The complaint, as noted earlier, seems to allege actual fraud. The affidavits do not go that far. They set forth what are very clearly misrepresentations. These misrepresentations, however, may be the basis for a claim to rescind for innocent misrepresentation, but not for an action for actual fraud. It is questionable whether they are sufficient to establish an instance of constructive fraud, which plaintiff must establish, at least if it is to be entitled to damages for fraud. In this connection plaintiff relies upon *Bank* v. *Board of Educ. of City of N. Y.* (305 N. Y. 119). That case is quite distinguishable from this one.

In the *Bank* case the contractor relied upon representations that its work would be done in conjunction with three other contracts to be let at about the same time. Materiality of the representation turned on the consideration that the contractor's work would be markedly facilitated if the other work were going on at the same time. Despite the earlier representations of letting integrated contracts, the board of education did not let the other three contracts but only one of them, resulting in excessive costs to the contractor. It never informed the plaintiff of its changed intention. The Court of Appeals held that this was a constructive fraud and allowed a recovery in damages. Presumably, the action was brought within the time provided in the agreement; and if so, the *Bank* case does not help the plaintiff in this case at all; for, as we have seen, to equate the city's conduct with fraud yields no additional remedy to the contractor so long as it has affirmed the contracts and has lost the opportunity to rescind them.

Since, however, the *Bank* case is stressed, it may be wise to consider it further. In the *Bank* case the facts come much closer to the traditional elements of fraud, than do the facts in this case. While, in the *Bank* case, there may not have been an intention to defraud the contractor, there was evidently a knowing silence on the part of the board of education when it let the contract to the contractor. It must have known that it was not going forward with the earlier promissory representation that it had made, namely, that the four contracts would be let together. Thus the Court of Appeals said (p. 133): "Knowing, as did the defendant, before the plaintiffs' contract was executed, that funds were then lacking sufficient to meet the known cost of constructing the addition to Public School 35, and having then concluded to change its plans and to delay indefinitely the award of two of the four contracts, each of which called for integrated work and co-ordination by the plaintiffs, the defendant should not have withheld from plaintiffs information as to a change in plan so vital as to make inappropriate the basis of plaintiffs' bid." The court went on to comment that such silence may constitute fraud, at least constructive fraud. There is no suggestion in the affidavits in the instant case that the city had any equivalent knowledge when it advertised for bids, received plaintiff's bids, or actually let the contracts. Negligence there may have been, but the true physical facts concerning the sites were not consciously ascertained by the city or the contractor until the site of the excavation was required to be changed and, with respect to the trolley tracks

and railroad ties, until the contractor penetrated the surface. The discovery much later of documents somewhere in the city files changed nothing. It did not show that the city had committed an actual fraud, or a constructive fraud in the very special sense used in the *Bank* case. It simply provided some evidence of negligence on the part of the city's employees — a negligence hardly greater than that of the contractor in not reading all of his contract and bringing suit within one year after the final certificates had been issued and payment made.

The order of the Appellate Term should be reversed and the order and judgment of Special Term at the City Court, dismissing the complaint in favor of defendant, should be reinstated.

RABIN, J. (dissenting). I agree with the statement in the majority opinion that the contractor did not rescind, but proceeded with the contract under protest, and also agree with the majority view that the contractor had the right to affirm the contract by performance and later claim damages resulting from misrepresentations.

The majority holds, however, that an action for damages based on those misrepresentations is barred by the one-year limitation of action clause contained in the contract. That clause refers only to an action arising out of the contract. The majority holding therefore would seem to require a reading into the contract of a provision that an action for damages based upon misrepresentation must also be commenced within one year. Assuming that the contract may be so read and that it was intended to limit an action for misrepresentation, then I think it would still be unenforcible against the plaintiff, for the city may not be permitted to absolve itself in advance from liability for misrepresentation. (*Jackson* v. *State of New York,* 210 App. Div. 115, affd. 241 N. Y. 563; *Jandous Elec. Equipment Co.* v. *State of New York,* 158 Misc. 238; *Jarcho Bros.* v. *State of New York,* 179 Misc. 795; *Nordone Contr. Co.* v. *City of New York,* 295 N. Y. 985).

And it makes no difference that the misrepresentation may have been made without any deliberate intent to mislead the contractor. With or without such intent the municipality is nevertheless liable for damages to the contractor resulting from misrepresentation (*Young Fehlhaber Pile Co.* v. *State of New York,* 177 Misc. 204, affd. 265 App. Div. 61). In that case the State, to the damage of the contractor, represented a physical condition as to the bed of a creek which was not true. In so doing it relied upon a survey that had been made six years earlier, but which was no longer accurate due to the fact that

subsequently the creek had been dredged. In holding the State not excused by its error the court said (p. 207): "The detailed contour map furnished by the State constituted a material representation, which was relied upon by the bidder (and had in fact been relied upon by the State in its preparation of plans and engineer's preliminary estimates) and such misrepresentation takes on the legal complexion of active fraud. * * * It represented to the bidder and successful contractor a clearly defined physical condition and must be bound by the consequences, however costly and unpleasant they may be. * * * "Ignorance of facts peculiarly within its knowledge cannot excuse the State any more than were it an individual and it must be bound by the same rules applicable to an individual in similar circumstances."

The contract in the *Young Fehlhaber* case (p. 205) contained a clause wherein the contractor agreed that "he will make no claim against the State by reason of the estimates, tests or representations of any officer or agent of the State." But it was held that defendant could not thus relieve itself from liability for material misrepresentation.

The majority opinion does not overlook that and the other cases referred to herein, but holds them inapplicable because they contained a "total immunity" clause as distinguished from the "limitation" provision in the contract in this case. The difference, however, would seem to be merely one of degree, for if the contractor is limited to one year in which to bring an action for misrepresentation then it is obvious that to some extent at least he is being deprived of his right to recover damages based on misrepresentation. Whether the immunity is total or partial should make no difference for in either case it is a violation of the principle stressed in the decisions that one may not by contract relieve himself from liability for material misrepresentation. It should be noted too that the contractor claims it did not discover, until long after the expiration of the one-year-limitation period, that the city had in its own records all the true facts which it misrepresented to the plaintiff and on which it based its bids. Yet even in these circumstances if the limitation clause is held binding the contractor is deprived of his right of action.

There would seem to be little doubt as to the seriousness and materiality of the misrepresentations that were made to plaintiff by the city. From its own records the city could have known and we think should have known — with respect to the first contract — that it did not own the fourteen-foot strip. Never-

theless it undertook to represent that it did own that strip and as a result of that misrepresentation the job cost the contractor much more than was anticipated. As to the second contract the city represented to the contractor that the pavement of New York Boulevard consisted only of asphalt concrete on macadam, whereas from its own records, it should have known that that was not true. Thus the contractor at considerable additional cost was compelled to remove from the bed of the street, old abandoned railroad tracks and ties which the city itself had covered over sometime previously. It is clear therefore that with respect to both contracts defendant misrepresented material facts which the contractor relied upon to its detriment.

The claim in this case does not appear to be one " arising out of or based upon " the contract so as to make the one-year limitation applicable. Rather it is for misrepresentation inducing the contract and in that respect is something apart from the contract itself. But even if, as the majority holds, the limitation clause includes actions for misrepresentations, the clause is not enforcible in view of the decisions referred to above.

I accordingly dissent and vote for affirmance of the order of the Appellate Term.

CALLAHAN, J. P., BASTOW and BOTEIN, JJ., concur with BREITEL, J.; RABIN, J., dissents in opinion.

Order of the Appellate Term reversed and the order and judgment of Special Term at the City Court, dismissing the complaint in favor of defendant, reinstated. Settle order on notice. [See *post,* p. 962.]