**RAYMOND INTERNATIONAL, INC., Plaintiff,**

v.

**CITY OF NEW YORK, Defendant.**

**No. 78 Civ. 4853.**

United States District Court, S. D. New York.

April 21, 1981.

Berman, Paley, Goldstein & Berman, Peter L. Agovino, R. Bertil Peterson, New York City, for plaintiff.

Allan G. Schwartz, Corp. Counsel, Kenneth A. Sommer, Michael V. Itteilag, Jeffrey Schanback, New York City, for defendant.

MEMORANDUM OPINION AND ORDER

SOFAER, District Judge:

Acting as agent for the defendant, New York City, the New York City Transit Authority (TA) advertised in December 1972 for sealed bids for a contract of land borings (Contract ABD) to be performed in the Bronx and Manhattan for a one year period. *See* Exhibit 7, Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment (hereinafter "Exhibit 7").

Contract ABD was typical of TA boring contracts in that it utilized a unit price system for pricing twelve separate items. *See* Exhibit B, Defendant's Notice of Motion for Summary Judgment. The TA's contract proposal noted, however, that the quantities of these units were approximate and:

> are not in any way guaranteed or represented as correct or intended to be relied upon and they shall not be taken as final and shall form no basis for any claim in case they do not correspond with the final measurements or quantities. It is further understood that the Authority reserves the right to increase or diminish or to omit entirely any of the quantities or items as therein stated.

Exhibit 7 at 7.

Subsequently, the TA received three bids. Upon opening them on January 19, 1973, the TA determined that plaintiff's proposal was the lowest. The TA calculated, however, that plaintiff's proposal was "disproportionate." This meant that, compared with bid prices previously submitted by the plaintiff and other low bidders, the plaintiff's unit prices for individual borings under Contract ABD were relatively high. On the other hand, plaintiff's bid of $.01 per day for rig work, was extremely low, as this price was to reflect the one day cost of a rig, a core driller, and a core driller's helper. *See* Exhibit C, Defendant's Affidavit of Salvatore Valenza. As noted in the contract proposal (at page 100), the figures utilized in the bids were approximate, since the actual work may vary from the bid estimate and result in quantity and cost overruns. *See* Affidavit of Salvatore Valenza, at 4. Although the plaintiff's bids were the lowest prices at the estimated quantities of borings, the TA was concerned that if there were quantity overruns, then because of the disproportion in the plaintiff's unit bid prices, the plaintiff's overall price total would exceed the second lowest bidder's price total for the same amount of work.

In January 1973, the TA held a qualification hearing to consider the professional and financial capabilities of the plaintiff as well as the disproportion of the bid. The hearing was conducted by Morris Loshinsky, then Division Engineer of Construction, and the plaintiff was represented by Mr. Raymond Gibson. During the hearing, the TA expressed to Gibson, both on and off the record, its concern over the disproportionate bid. Loshinsky claims to have stated that, pursuant to its authority, the TA would have to award the bid to the second lowest bidder unless the plaintiff modified its bid so that, in the event of unit overruns, the plaintiff's total price would not exceed the second lowest bidder's price. *See* Affidavit of Morris Loshinsky, at 2. This action would have been based upon the TA's "right to . . . award a contract to other than the lowest responsible bidder when it deems it to be in the public interest to do so in accordance with applicable law." Exhibit A to Defendant's Affidavit of Salvatore Valenza, at IX.

After the hearing, on January 29, 1973, the plaintiff, by Mr. Gibson, sent a letter to the TA, which provided modifications that lowered the unit prices in the event of quantity overruns. The letter stated in pertinent part:

> In connection with our proposal for Test Borings on Contract ABD of the New York City Transit Authority, I would like to suggest the following Amendments: Where the work performed during the year is in excess of the quantity listed on the bid sheet, I think that the following reduced prices would be equitable to the Transit Authority and would be sufficient to cover our extra costs.

Exhibit 11 to the Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment. The plaintiff's prices for the quantity overruns, as modified, by this letter, equalled those of the second lowest bidder.

On February 9, 1973, Salvatore Valenza, TA's Deputy Chief Engineer, sent a letter to John T. O'Neill, TA's Executive Officer and Chief Engineer, recommending that Contract ABD be awarded to plaintiff. Exhibit 8, Plaintiff's Affidavit in Opposition to

Defendant's Motion for Summary Judgment. The letter noted that, in the event of quantity overruns, the plaintiff had provided "reduced prices for the excess quantities of work." *Id.* Thereafter, on February 23, 1973, the TA notified plaintiff in writing that it had been awarded the contract, citing to Mr. Valenza's report. *See* Exhibit 15, Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment. The TA then sent plaintiff Contract ABD, and on March 20, 1973, the plaintiff returned four signed copies of the contract to the TA. *See* Exhibit 16, Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment. On April 19, 1973, the TA returned a signed copy of the contract to plaintiff. *See* Exhibit 17 to Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment.

Plaintiff commenced work under the contract, and completed the job in August 1974. Most of the items completed did not exceed the quantities bid. Contract Items 1(b) and 3(b), however, did exceed the estimated quantities of required boring by 4,389.99 feet and 11,611.35 feet, respectively. For these two items, the TA paid plaintiff the original bid prices for all boring up to the estimated quantities, and paid the modified prices for the overruns. On October 1, 1975, the TA sent plaintiff a letter, notifying it that the Certificate of Completion had been filed. Final payment was made to the plaintiff on November 18, 1975, by which time plaintiff had filed a verified claim. On October 19, 1978, plaintiff commenced this suit to recover the difference between the original and modified prices on the overruns, claiming that it is owed $30,284.03 under Item 1(b) of the contract and $55,734.49 under Item 3(b). This litigation ultimately stems from the fact that the formal contract, as signed by both parties, specified only prices for the estimated quantities and did not include any prices for quantity overruns. Furthermore, plaintiff denies that a copy of its January 29, 1973 letter was attached to the formal contract it received.

Both parties have cross-moved for summary judgment. The legal issues are complex, but summary judgment on the merits need not be considered. Defendant accurately contends that the action is time-barred, since it was not filed within six months after completion of performance, as provided for in Contract ABD. At plaintiff's request, this Court permitted it to conduct discovery on the timeliness issue for thirty days and thereafter to submit affidavits and memoranda. The record is now complete, and defendant's motion for summary judgment must be granted.

Contract ABD required that any claim arising out of the transaction be commenced within six months of the TA's filing of a "certificate of completion" with the Comptroller's Office. *See* Exhibit 7, Affidavit in Opposition to Defendant's Motion for Summary Judgment, Para. 17, at 37. Relying upon this clause of the contract, defendant contends that plaintiff's suit is time-barred, since this action was commenced more than six months after the alleged filing of the certificate. Plaintiff argues, however, that the actual certificate was never filed, and that therefore the period of limitations has not yet expired.

■ The Court granted plaintiff additional time for discovery on this issue, in order to gather documentary evidence to controvert defendant's documents evidencing the filing of a certificate of completion. *See* Transcript of Hearing of June 16, 1980, at 2–4. Plaintiff, however, has produced no evidence to controvert defendant's claim. Rather, plaintiff asserts that the exhibits proffered by defendant do not constitute a certificate of completion. This contention is based upon some confusion caused by defendant's attorney's original incorrect identification of a payment estimate as the certificate of completion. *See* Exhibit H, Defendant's Cross-Motion for Summary Judgment. Subsequently, however, defendant's attorney explained his error, and supplied what he affirmed were, and what appear to be the proper documents, all indicating they were duly prepared and filed with the Comptroller. *See* Affidavit of Michael Itteilag, Sept. 6, 1979, at 1–2, and Exhibit O. Those documents show that, on

September 11, 1975, a TA Division Staff Engineer proposed a certificate of completion for Contract ABD that was subsequently approved by the Chairman and Chief Executive Officer of the TA. Furthermore, they appear on their face to demonstrate that, on October 1, 1975, the TA sent a certified copy of the certificate of completion to the Comptroller's Office and, on the same day, notified plaintiff in writing that the certificate had been filed. *See* Exhibit N, Defendant's Affidavit in Opposition to Plaintiff's Cross-Motion for Summary Judgment. This has been confirmed by two additional affidavits, filed pursuant to an order of this Court, which establish that the certificate was in fact duly filed with the Comptroller. See affidavit of Morris Loshinsky (April 10, 1981), Regina Goulden (April 13, 1981). These exhibits, uncontroverted by any factual evidence of the plaintiff, establish that the certificate of completion was filed on October 1, 1975, and that plaintiff received adequate and timely notice of this fact.

The limitation period for filing suit agreed to in the contract required plaintiff to file suit within 6 months of the filing of the certificate of completion in the Comptroller's Office, or by April 1, 1976. *See* Exhibit 7, Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment. Plaintiff did not file this action until two years thereafter on October 19, 1978. Plaintiff's suit may therefore proceed only if the agreed limitation period is invalid, which would result in the application of New York's six year statutory limitation for contractual suits. *See* CPLR § 213.

The applicable New York law, CPLR § 201, provides:

An action, including one brought in the name or benefit of the state, must be commenced within the time specified in this article unless a different time is prescribed by law or a shorter is prescribed by written agreement. No court shall extend the time limited by law for the commencement of an action.

The New York courts have recognized that, in enforcing such time limitation agreements, the shortened period must be reasonable and its terms will be strictly construed. *See Redington v. Hartford Acc. and Indem. Co.*, 463 F.Supp. 83, 86 (S.D.N.Y.1978) (Duffy, J.), *Hurlbut v. Christiano*, 63 A.D.2d 1116, 1118, 405 N.Y.S.2d 871, 873 (4th Dep't 1978); *Stanley R. Benjamin, Inc., v. Fidelity & Cas. Co. of New York*, 72 Misc.2d 742, 744, 340 N.Y.S.2d 578, 579–80 (Sup.Ct. Nassau County 1972). The New York courts have held, however, that the six month limitation clause utilized in New York City's contracts is enforceable. *See, e. g., Sando Parisi & Sons, Inc. v. Board of Educ.*, 32 A.D.2d 909, 301 N.Y.S.2d 748 (1st Dep't 1969), *aff'd*, 26 N.Y.2d 810, 309 N.Y. S.2d 349, 257 N.E.2d 896 (1970) (mem.); *City of New York v. Alpha Contracting Corp.*, 182 Misc. 115, 49 N.Y.S.2d 609 (App. Term 1st Dep't 1944) (per curiam).

While in *John J. Kassner & Co. v. City of New York*, 46 N.Y.2d 544, 415 N.Y.S.2d 785, 389 N.E.2d 99 (1979), the identical clause presently at issue was not permitted to be used where its practical effect was to extend the statutory limitation period beyond six years,[1] the Court stated that, where the effect of the limitation clause is to shorten the limitation period, as in the instant case, then such an agreement is reasonable and enforceable. *See* 46 N.Y.2d at 550–52, 415 N.Y.S.2d at 788–90, 389 N.E.2d at 102–04. *See also Schulman Inv. Co. v. Olin Corp.*, 477 F.Supp. 623, 627 (S.D.N.Y.1979) (Tenney, J.); *Oil & Gas Venture—First 1958 Fund, Ltd. v. Kung*, 250 F.Supp. 744, 753

---

[1] In *Kassner*, the plaintiff, who had performed some engineering work for the City, did not institute suit until five months after payment by the City and almost seven years after notification by the City of the amount to be paid. 46 N.Y.2d at 548, 415 N.Y.S.2d 787–88, 389 N.E.2d 101. The Court determined that the breach accrued, for statute of limitations purposes, when the plaintiff received notification of the amount to be paid by the City. *Id.* at 550, 415 N.Y.S.2d at 789, 389 N.E.2d at 102–03. The Court refused to apply the six-month limitation clause, because it was predicated upon the filing of the certificate of completion, which was not done until six and one-half years after the breach and thus would have extended the period of limitations beyond the statutory maximum. *Id.* at 551–52, 415 N.Y.S.2d at 789–90, 389 N.E.2d at 103–04.

(S.D.N.Y.1966) (Weinfeld, J.); *Backus v. Nationwide Mutual Ins. Co.*, 56 App.Div.2d 724, 392 N.Y.S.2d 765 (4th Dep't 1977); *Soviero Bros. Contr. Corp., v. City of New York*, 286 App.Div. 435, 142 N.Y.S.2d 508 (1st Dep't 1955) (Breitel, J.), *aff'd*, 2 N.Y.2d 924, 161 N.Y.S.2d 888, 141 N.E.2d 918 (1957).

Defendant's motion to dismiss and for summary judgment are granted on the ground that plaintiff's suit is untimely. Fed.R.Civ.P. 12(b)(6) and 56(b).

SO ORDERED.