OPINION OF THE COURT
Edward H. Lehner, J.
The main questions presented herein are: (i) Despite a strong policy against exculpatory provisions that seek to insulate a contracting party from liability for ifs own gross negligence, coupled with plaintiff’s allegations of defendant’s gross negligence in this case, may plaintiff’s recovery nonetheless be barred by its failure to comply with a contractual notice of claim provision? (ii) Has plaintiff set forth sufficient facts in support of its allegations of gross negligence so as to forestall the death knell of an exculpatory clause barring “damages for delay”?
*648 Plaintiff is a contractor who undertook to furnish and install plumbing in Marcus Garvey Park Village, a New York City Housing Authority project. Construction of the project was divided into various contracts and involved four separate prime contractors. The specifications were contained in a single volume which also contained instructions to bidders, general conditions and special conditions which were part of and applicable equally to each of the prime contracts.
The second cause of action is for work performed in addition to that required by the contract, for which plaintiff claims a balance due of $18,817.86. This amount represents replacement costs for the original temporary plumbing, allegedly necessitated by defendant’s failure to prevent vandalism on the construction site.
At the outset, it is unclear whether damages for vandalism as set forth by plaintiff herein were within the intended scope of the original contract.[1] At first blush it would seem that they are. Subparagraph 9c (5) imposes upon the contractor the duty to insure the work against “any and all risks of destruction, damage, or loss, including but not limited to fire, theft, and any other casualty or happening” (emphasis supplied). The contract imposes upon plaintiff the duty to insure against the specific risk of theft, an act constituting one of the only two discrete acts inherent in the general rubric of vandalism. Subparagraph 26A (1) (a) further transfers the risk to the contractor by making it the insurer of the defendant, agreeing to hold defendant harmless regardless of whether the loss is covered by any insurance carried by the contractor. The provisions for security of the work site (subpar 26B of the contract) further attest to the fact that vandalism was foreseen by the parties.
It is noteworthy, however, that the previously mentioned agreement by the contractor to hold defendant harmless specifically excepts “those risks which result solely from active, affirmative, willful acts done by the Authority”. Despite the preponderance of risk-shifting clauses, it is unlikely that the parties contemplated defendant’s alleged *649 gross negligence or willful misconduct in allegedly failing to take any action to prevent the vandalism. Such unforeseen misconduct of defendant is qualitatively different from the contemplated vandalism by third parties, and the essence of plaintiff’s cause of action, as culled from its moving papers, is based on defendant’s own acts. Thus, while this court cannot determine for certain, it is unlikely that such conduct was within the contemplation of the parties at the time of contracting and therefore not likely to have been within the scope of the original contract.
Defendant asserts that, nevertheless, subparagraph 28C and 5 IB of the general conditions bring temporary plumbing within the scope of the original contract:
“28C. Plumbing Contractor. The Plumbing Contractor shall furnish and install all necessary temporary water and waste lines for temporary toilets and shall perform all necessary excavation and backfill * * * The cost of all the above work shall be included in his Base Bid.”
“51B. Installation and Maintenance. The Contractor of Plumbing shall provide, install, and maintain a temporary water system, including the necessary temporary water meters, water lines, valves, fittings, pumps, and other appurtenances, all of such size and capacity as adequately to supply the needs under Contract Nos. 6, 7, 8 and 9”.
It is not so readily apparent, however, that claims for extra plumbing work — done after the initial installation of the temporary plumbing — were intended to be within the scope of the original contract. All that seems to have been contemplated was ordinary and ongoing maintenance, not the sort of total replacement necessitated by extraordinary or sudden occurrences such as vandalism.
It would thus appear that there are triable issues as to whether the contract bars the claim set forth in the second cause of action, as the court cannot ascertain from the papers whether the contract bars recovery for work that had to be done more than once due to alleged vandalism.
As a further bar to plaintiff’s claims, defendant sets forth plaintiff’s failure to comply with a contractual notice of claim provision which expressly makes such notice a *650 condition precedent to recovery for extra work or damages (general conditions subpars 11 A, 15B [1]). Such provision also requires that the contractor furnish additional data within 15 days of written demand and that compliance with such demand is likewise a condition precedent to plaintiff’s recovery; failure to comply is “deemed a waiver by the contractor of all claims for additional compensation or damages”. Thus, even if this court were to interpret the contract so as to hold that the work performed was not included in the original contract, and further constituted “extra work” that was not effectively excluded by the clauses specifically relating to extra work, defendant submits that such claims must be barred by the failure to comply with the notice of claim provisions.
Cases confronting this issue have arisen with respect to contractual short periods of limitations, which are analogous to contractual notice requirements for purposes of this discussion. It has been noted that: “Contractual stipulations which limit the right to sue to a period shorter than that granted by statute, are not looked upon with favor because they are in derogation of the statutory limitation. Hence, they should be construed with strictness against the party invoking them.” (Hauer Constr. Co. v City of New York, 193 Misc 747, 749 [App Term, 1st Dept], affd 276 App Div 841, mot for lv to app den 276 App Div 898; Hurlbut v Christiano, 63 AD2d 1116, 1117; McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C201.-2, p 57.)
Judicial antipathy to such agreements has more recently given way to judicial approval. (Kassner & Co. v City of New York, 46 NY2d 544, 552; Ebbets v State of New York, 47 NY2d 973, 975 [Meyer, J., concurring opn]; CPLR 201; Snyder v Gallagher Truck Center, 89 AD2d 705; Uniform Commercial Code, § 2-725, subd [1]; § 7-204, subd [3].) Such agreements are generally valid if not unreasonably short. (Brink’s, Inc. v City of New York, 528 F Supp 1084, 1087; Raymond Int. v City of New York, 511 F Supp 773, 776-777; Matter of Blends, Inc. [Schottland Mills], 35 AD2d 377; Uniform Commercial Code, § 7-204, subd [3].)
The contractual short limitations period is especially favored with respect to municipal construction contracts. *651 In Soviero Bros. Contr. Corp. v City of New York (286 App Div 435, 442 [Breitel, J.], affd 2 NY2d 924), the underlying judicial rationale was propounded as follows: “The City of New York, as well as other governmental units in the State, makes thousands of contracts for public works. These many contracts involve disparate, complicated and involved programs, in widespread and separated areas. Of necessity, the contract letting is handled by regiments of the army of public servants. Over the years there have been many troubles and losses, and government has sought manifold ways in which to protect the public interest. One of these ways is the contractual short period of limitation requiring action while the evidence is fresh.” (See Griffin and Grubin, “Kalisch-Jarcho” — Simple Application of Old Principles, NYLJ, May 12,1983, p 1, col 2.) The court then noted (p 441) that a contractual short period of limitation “is valid and even salutary” (emphasis supplied). (See, also, Matter of Brown & Guenther [North Queensview Homes], 18 AD2d 327, 329; Driscoll v Board of Educ., 98 NYS2d 610.)
In Soviero (286 App Div 435, supra), the contractor sued for damages based on fraudulent misrepresentations as inducement to the contracts; the contractor had never elected to rescind. The First Department held that, while a total immunity clause expressly purporting to relieve the defendant from liability for misrepresentation is bad since the “provision is designed to shield the fraud”, a limitation provision, if reasonable, is not (supra, at p 441). In so stating, the majority expressly rejected the misgivings articulated by the dissenter, who argued that “[w]hether the immunity is total or partial should make no difference for in either case it is a violation of the principle stressed in the decisions that one may not by contract relieve himself from liability for material misrepresentation.” (286 App Div 435, 445 [Rabin, J., dissenting opn].)
The issue has not, however, been left to rest. It appears that the rationale of Justice Rabin’s strong dissent, stirred from its dormancy, has now risen to the fore.
Soviero (supra) involved a contractual period of limitations effectively barring liability despite allegations of misrepresentation. In the relatively recent decision of the *652 Court of Appeals in I.C.C. Metals v Municipal Warehouse Co. (50 NY2d 657, 663), it was held that, unlike a limitation of liability for loss or damage to stored goods as a result of the warehouse’s negligence, which is permissible, an attempt to limit liability for the conversion of such goods is unenforceable as violative of “strong policy considerations”. The crux of such public policy is that it is improper “to diminish one’s liability for injuries resulting from an affirmative and intentional act of misconduct * * * Any other rule would encourage wrongdoing” (I.C.C. Metals v Municipal Warehouse Co., supra, p 663, citing Ciofalo v Vic Tanney Gyms, 10 NY2d 294; Gross v Sweet, 49 NY2d 102). Following the decision in I.C.C. Metals this court has recently noted that it would be equally contrary to public policy to allow such an intentional wrongdoer to avail itself of a contractual benefit shortening the time to sue, holding that a short contractual period of limitations is likewise ineffective as a bar to liability when plaintiff’s claim is based on conversion of bailed goods. (Continental Metals Corp. v Municipal Warehouse Co., 112 Misc 2d 923 [Lehner, J.], affd 92 AD2d 477; see, also, Iselin & Co. v Milton Feinberg, Inc., 92 AD2d 495.)
The policy announced in Soviero (supra) is that of allowing a municipal contracting agency to protect itself from stale claims and thereby preserve the scarce funds in the city coffers. The. policy of I.C.C. Metals (supra) and Continental Metals (supra) is to prevent a party from disclaiming liability for its own intentional wrongdoing, regardless of whether such disclaimer is direct or indirect.
The Soviero (supra) and Continental Metals (supra) cases do not set forth a direct clash of public policies. In Soviero the court found that, while the complaint demanded damages for actual fraud, the affidavits revealed that the gravamen of the action was for misrepresentation, even innocently made (286 App Div 435, 437). Thus, the court was not confronted with allegations of intentional wrongdoing, as it was in I.C.C. Metals (supra). The I.C.C. Metals and Continental Metals cases, on the other hand, involved the liability of private warehouses, so there was no occasion for the courts therein to consider the effects of short limitation periods on the city treasury.
*653 The direct conflict of these countervailing policies must be resolved in the motion before this court. The issue, on which there is no direct authority, is whether a short period of limitation or notice of claim provision contained in a municipal construction contract bars a claim for extra work or damages instituted against a municipal agency where plaintiff alleges gross negligence or willful misconduct.
The prevailing rule was announced by the Court of Appeals in Kalisch-Jarcho, Inc. v City of New York (58 NY2d 377, 384-385):
“[A]n exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances. Under announced public policy, it will not apply to exemption of willful or grossly negligent acts (cf., e.g., Gross v Sweet, 49 NY2d 102, 106, with Ciofalo v Vic Tanney Gyms, 10 NY2d 294, 297; see, generally, 15 Williston, Contracts [3d Jaeger ed], § 1750A; 5 Corbin, Contracts, § 1068; Restatement, Contracts 2d, § 195).
“More pointedly, an exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant, immunity smacks of intentional wrongdoing. This can be explicit, as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith. Or, when, as in gross negligence, it betokens a reckless indifference to the rights of others, it may be implicit * * *
“In either event, the policy which condemns such conduct is so firm that even when, in the context of the circumstances surrounding the framing of a particular exculpatory clause, it is determined * * * that the conduct sought to be exculpated was within the contemplation of the parties, it will be unenforceable”. (Emphasis supplied.) First, it is clear that the policy against limiting liability extends to grossly negligent conduct as well as purely intentional wrongdoing. Second, the policy is a firm one which overrides the intentions of the parties. Third, the prohibition focuses on “the misconduct for which [the clause] would grant immunity”, i.e., the effects or results of the exculpatory clause, rather than on the manner in *654 which the exemption has been framed. That this is the case is seen from the court’s language in condemning such a clause “no matter how flat and unqualified its terms”. In essence the two types of clauses approach the problem of risk allocation from different perspectives, one framed procedurally while the other appearing to be substantive, but since the ultimate result is the same the sole difference becomes merely one of draftsmanship.[2]
Since the court, in the below discussion of the third cause of action, finds that there are triable issues of fact with respect to the claim of gross negligence, which, if proved, would bar (as violative of public policy) enforcement of the short notice of claim provision, said provision cannot result in the grant of summary judgment to defendant.
In De Foe Corp. v City of New York (95 AD2d 793), cited by defendant, the Second Department dismissed the contractor’s claim for failure to comply with the notice provisions of the contract. Since that case did not involve the issues of defendant’s misconduct or the possible waiver of the notice, it is clearly inapposite.
In summary, based on an interpretation of the contract; it cannot be determined with any appreciable degree of certainty whether the additional work performed is properly “extra work” and excluded by various exculpatory provisions or whether, not being “extra work”, it is not compensable since it was included in the original contract price. In addition, if considered “extra work” but not excluded because the exculpatory provisions are inadequate, there is a triable issue as to whether the alleged gross negligence bars enforcement of the short notice of claim provision.
Accordingly, defendant’s motion for summary judgment seeking to dismiss plaintiff’s second cause of action is denied.
Plaintiff’s third cause of action seeks damages for delay resulting from the following alleged breaches of contract by defendant: (a) interference by failure to progress the work of the other prime contractors in accordance with the *655 established construction schedule and failure to properly coordinate the work of the prime contractors; (b) failure to provide plaintiff with timely elevator service; and (c) failure to accept the work in accordance with the contract, normal custom and usage of the construction industry and within a reasonable time after the work was tendered for acceptance. The damages alleged represent expenses for increased labor, superintendent and office costs.[3]
Defendant claims to be insulated from liability by virtue of an exculpatory clause disallowing damages for delay “from any cause” (general conditions, subpar 13B) and limiting the contractor’s remedy to an extension of time (general conditions, art 2C).
Plaintiff again seeks to bring its case within the gross negligence or willful misconduct exception under Kalisch-Jarcho, Inc. v City of New York (58 NY2d 377, supra), and thus beyond the coverage of the exculpatory clause.
Despite the absence of a clear articulation of plaintiff’s theory from the pleadings, the basis for its position is easily culled from its affidavit. The pleading defect may be cured by amendment pursuant to CPLR 3025 (Alvord & Swift v Muller Constr. Co., 46 NY2d 276; Siegel, 1981 Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3212:ll, 1983-1984 Supp Pamph, p 119), which could then simply track the ratio decidendi of Kalisch-Jarcho, Inc. v City of New York (supra), with appropriate language tailored to characterize the conduct complained of as breach of contract as a result of grossly negligent conduct.
The situation at bar is particularly apt for such liberal treatment. The original complaint in this action was served seven years prior to the decision of the Court of Appeals in Kalisch-Jarcho, Inc. v City of New York (supra). By a 4-to-3 decision the court (per Fuchsberg, J.) required a municipal contractor to prove willful or grossly negligent conduct to circumvent an exculpatory clause barring damages for delay. The dissenters strongly objected to what they perceived as the majority’s abandonment of recent *656 precedent requiring a lesser showing of “active interference”, precedent upon which the construction bar had apparently placed great reliance. (See Cushman and Heideck, Seven Steps to Resolving Construction Contract Claims, p 2-31; Reiss, “Kalisch-Jarcho” — Its Effect on Construction Industry, NYU, April 13,1983, p 1, col 2.) In light of the parties’ reasonable expectations and respect for the doctrine of stare decisis it would be unfair to bind plaintiff’s fortune to its newly obsolete pleadings.
Thus, the determination to be made at this juncture is whether plaintiff has set forth sufficient triable issues of fact to avoid dismissal notwithstanding its ability to cure the pleadings.
Neither the original complaint dated April 9, 1976 nor the amended complaint dated April 2, 1979 in any way indicate that the damages sought for delay were the result of vandalism. Vandalism is mentioned but once in plaintiff’s verified bill of particulars dated September 13, 1978 (the undated demand based on the original complaint of 1976). Likewise absent are allegations of gross negligence or willful misconduct. Plaintiff’s affidavit in opposition to the present motion for summary judgment is the first inkling of its intent to advance a theory of liability based on the Housing Authority’s gross negligence or willful misconduct.
The standard of willfulness, as applied to breaches of contract, has been criticized by a prominent contracts scholar as indicating “a childlike faith in the existence of a plain and obvious line between the good and the bad, between unfortunate virtue and unforgivable sin.” (5A Corbin, Contracts, § 1123, p 7.) This court is fortunately spared the dubious task of pinpointing precisely where along that “plain and obvious line” plaintiff’s conduct has fallen. Despite the conclusory allegations in its affidavit, plaintiff’s moving papers are totally devoid of evidentiary facts to support a claim of willful breach. However, the possibility of grossly negligent breach remains.
Exhibit C of plaintiff’s affidavit in opposition to the motion consists of a series of eight letters, written during a period of eight months from June 20,1974 through February 6,1975, in which plaintiff had complained to defendant *657 that extensive vandalism had resulted from inadequate security due to defendant’s improper supervision, failure to coordinate the work of the other contractors, and failure to accept the work in a timely manner.
Defendant argues that subparagraph 2B of the contract’s special conditions and subparagraph 6A of the general conditions require that the contractors coordinate their work with each other. It is clear, however, that defendant did not totally relinquish its supervisory powers over its own project, as subparagraphs 17 (E) (3) and (4) permit the Housing Authority to take appropriate measures to “progress” the work.
Defendant further argues that subparagraph 26B of the contract’s general conditions requires that the general contractor post a security guard and that therefore defendant is not responsible for security lapses. Yet that same subparagraph allocates supervisory powers to defendant by providing that if any guard is found to be incompetent or if security proves insufficient, the Housing Authority may demand that the security force be augmented at the general contractor’s expense. Thus, although a cursory reading of paragraph 24 of plaintiff’s affidavit would suggest that defendant failed to provide security, when in fact no such duty is imposed by the contract, the thrust of plaintiff’s theory is that defendant was grossly negligent in its supervisory capacity in failing to require additional security by the third party obligated to provide it under the contract, despite numerous letters advising defendant of the urgent need to do so.
The situation is thus markedly different from that in Slattery Assoc. v City of New York (98 AD2d 686), in which it was plaintiff, rather than a third party, that had the obligation under the contract to safeguard the construction site. The site was invaded by a mob, damage and delay resulting. The police were called but, according to plaintiff, did not stop the mob and indeed restricted plaintiff from possible interference. The court held that the city’s failure to furnish adequate police protection constituted neither intentional wrongdoing nor gross negligence, noting that the “city does not breach a contract entered into in its *658 proprietary capacity by a failure to exercise in a particular way its governmental function of allocation of police resources and protection” (supra, p 687). The duty which the city was alleged to have breached in Slattery was that of providing security, rather than supervision over a third party’s duty to do so.
Furthermore, in Slattery (supra) any duty forming a basis for negligence, wherein foreseeability of risk is an essential element, never had a chance to arise since the damages in that case were the result of a solitary and sudden episode of destruction. The vandalism alleged in the case at bar, on the other hand, consisted of numerous repeated acts in which plaintiff received notice of the need to take corrective action; foreseeability of the risk thus giving rise to a duty to act.
As to plaintiff’s claim that defendant refused to accept the work when completed, the letters dated July 25, 1974, August 9, 1974 and August 16, 1974 included in exhibit C to plaintiff’s affidavit sufficiently raise an issue of fact as to whether defendant was grossly negligent. There is no claim by defendant that plaintiff failed to comply with the conditions for acceptance set forth in paragraph 34 of the general conditions of the contract.
Exhibit F of plaintiff’s affidavit consists of two letters and a mailgram regarding the disruption of elevator service, which plaintiff claims delayed its workmen since they had no choice but to carry their tools and supplies up many flights of stairs in order to complete their plumbing work.
Defendant contends that subparagraph 64D of the general conditions imposes the responsibility for elevator maintenance upon the electrical contractor. Nevertheless, it would defy logic and strain credulity to conclude that the Housing Authority intended to render itself completely bereft of all supervisory powers, stilling its own hand, when something as essential as elevator service could conceivably grind the entire project to a halt. Such interpretation is therefore rejected.
Based on the contractual provisions which, this court interprets, retain at least some measure of supervisory powers in the hands of the defendant, and based on the letters submitted as exhibits C and F as part of plaintiff’s *659 affidavit, there are sufficient issues of fact as to whether defendant was grossly negligent in its supervisory capacity. Accordingly, as to those portions of plaintiff’s third cause of action presented in paragraphs 16(a), (b) and (c) of the complaint, defendant’s motion for summary judgment dismissing those claims is denied.
There is a further basis for the above disposition. Under the “active interference” rule widely followed prior to the recent decision in Kalish-Jarcho, Inc. v City of New York (58 NY2d 377, supra), appellate courts in this State had viewed with disfavor the granting of summary judgment in such cases, holding that any determination as to the legal significance of the exculpatory clause should await development of the facts at trial. (Matter of Chuckrow Constr. Co. [Horowitz Bros.), 30 AD2d 789 [motion for summary judgment]; Norman Co. v County of Nassau, 27 AD2d 936 [dismissal motion treated as motion for summary judgment]; Ippolito-Lutz, Inc. v Cohoes Housing Auth., 22 AD2d 990 [summary judgment]; Shalman v Board of Educ., 31 AD2d 338, .342 [motion to dismiss under CPLR 3211, subd (a), par 7]; Vanderlinde Elec. Corp. v City of Rochester, 54 AD2d 155,159 [motion to dismiss].) In boíh Kalisch-Jarcho and Gottlieb Contr. v City of New York (86 AD2d 588, affd 58 NY2d 1051) the appellate reversals were after plaintiff had been given the opportunity to make a complete showing at trial, and both decisions were based on the evidence in the trial record. Although summary judgment dismissing the complaint was granted in Slattery Assoc. v City of New York (supra), such judgment was as a matter of law and not based on the insufficiency of plaintiff’s proof.
With the rule announced in Kalisch-Jarcho (supra) keyed more toward a subjective inquiry as to defendant’s knowledge and intent, rather than the objective acts under the old “active interference” rule, there is now even more reason to eschew summary judgment. (See Wright, Miller and Kane, Federal Practice and Procedure, §§ 2730, 2730.1; Sonenshein, State of Mind and Credibility in the Summary Judgment Context: A Better Approach, 78 NW Univ L Rev 774, 786-795.)
Defendant herein had previously sought to strike this action from the Trial Calendar, which motion was denied *660 by this court. It had sufficient opportunity to interpose a substantive motion to dismiss based on the exculpatory clauses in the contract, yet it has apparently chosen to forego that tactic. Eight years after service of the original complaint and on the eve of trial it would be singularly inappropriate to deprive plaintiff of its day in court.
In summary, defendant’s motion for summary judgment seeking dismissal of plaintiff’s second cause of action, for extras, is denied. The branch of the motion seeking dismissal of those portions of the third cause of action contained in paragraphs 16(a), (b) and (c) of the complaint is denied.

. “Ambiguities are a frequent occurrence in construction contracts.” (Currie and Thomas, “Legal Problems of Construction” in Construction contracts [PLI-1981], p 973.)

. See dissent of Justice Rabin in Soviero Bros. Contr. Corp. v City of New York, 286 App Div, at p 445.

. Surprisingly, plaintiff makes no claims for damages based on the costs of carrying extended insurance coverage, extended rental equipment costs or increased material costs, which are frequently additional elements in delay damage cases.