Colleen MORRISSEY, Plaintiff–Appellant,

v.

GENERAL MOTORS CORPORATION, Defendant–Appellee.

No. 00–9402.

United States Court of Appeals, Second Circuit.

Oct. 23, 2001.

Ronald J. Chisena, West Hempstead, NY, for appellant.

John R. Snyder, Boston, MA; Daniel J. Jackson, Andrew J. Camelio, on the brief, for appellee.

Present OAKES, and JACOBS, Circuit Judges, LYNCH, District Judge.*

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be AFFIRMED.

Colleen Morrissey appeals the district court's grant of summary judgment, dismissing her diversity claims seeking compensatory and punitive damages against General Motors for breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and fraudulent misconduct and unfair business practices.

The evidence before the district court, viewed in the light most favorable to Morrissey, shows that Morrissey and her father, who operated a Pontiac dealership in Commack, New York (the "Commack Franchise"), were asked by General Motors ("GM") in February 1996 whether they would be willing to close the Commack Franchise and acquire an interest in Rockville Centre Motors ("RCM"). As

---

RCM, the Morrisseys and GM would purchase jointly the assets of Benjamin Pontiac/Oldsmobile ("Benjamin") with a $1.5 million capital contribution from GM, and $300,000 from the Morrisseys.

Morrissey and her father anticipated that, upon purchase, RCM would relinquish its Oldsmobile franchise and acquire a GMC Truck franchise. During negotiations with GM, Morrissey requested several times that GM commit in writing to a date certain by which RCM would receive the GMC Truck franchise. GM refused to include any written guarantee concerning RCM's right to sell GMC Trucks, and on April 2, 1996, Morrissey received a letter explaining that GM was "not in a position to provide any assurances as to when or under what circumstances" the GMC franchise would be offered. The Morrisseys elected to proceed with the closing on April 4, 1996.

Several of the closing documents contained a general merger clause. One letter, signed by Morrissey, referenced one of the merger clauses, and provided that Morrissey would "voluntarily terminate her Oldsmobile Division Franchise ... upon the execution of a GMC Dealership Agreement." Morrissey ultimately received and accepted the sought-after GMC Truck franchise in April, 1998.

No document pertaining to the agreements between the parties includes any promises from GM concerning requisite timing or conditions for delivery of the GMC franchise. Morrissey relies on oral promises that: (1) GM would transfer a GMC Truck franchise to RCM within one to two months after the purchase of Benjamin; (2) GM would pay RCM $500,000 for image design renovations upon RCM's sale of its Oldsmobile franchise back to the Oldsmobile Division for that amount; and (3) all agreements were contingent on the

Morrisseys' initial closing of the Commack Franchise.

On appeal, Morrissey challenges the grant of summary judgment in favor of GM: (1) on breach of contract and breach of the implied covenant of good faith and fair dealing, because the parol evidence rule (relied on by the district court) does not bar consideration of oral promises that were omitted from the written contract due to fraudulent inducement or duress; and (2) on fraud and negligent misrepresentation, because the evidence, viewed in the light most favorable to Morrissey, indicated that Morrissey reasonably relied on GM's alleged misrepresentations.

We affirm.

1. This Court reviews a grant of summary judgment *de novo*. *Beckford v. Portuondo*, 234 F.3d 128, 130 (2d Cir.2000). Summary judgment is appropriate where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). Reaching this determination, the district court must "[e]xamin[e] the evidence in the light most favorable to the nonmoving party." *Adjustrite Systems v. Gab Business Services*, 145 F.3d 543, 547 (2d Cir.1998). However, "[T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (citations and footnote omitted). "Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.1998).

Under New York law, the "parol evidence rule bars proof of prior oral statements offered to refute the unambiguous terms of a written, integrated contract." *O'Hearn v. Bodyonics, Ltd.*, 22 F.Supp.2d

7, 13 (E.D.N.Y.1998); *see also Investors Ins. Co. of America v. Dorinco Reinsurance Co.*, 917 F.2d 100, 104 (2d Cir.1990) (holding that extrinsic evidence cannot be used to "vary the plain meaning of" a fully integrated contract). "Ordinarily, a merger clause provision indicates that the subject agreement is completely integrated." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir.1997). However, as Morrissey argues, a general merger clause does not preclude parol evidence of a claim based on duress or fraudulent inducement. *See id.; Thomas v. Scutt*, 127 N.Y. 133, 137, 27 N.E. 961 (1891).

Morrissey's allegation is that though she signed several completely integrated documents, each of which failed to record the oral promises allegedly made by GM concerning the GMC Truck franchise, she had no choice: she "had already gone to the closing and ... put [her] money into this deal" based on GM's earlier promises. This claim of duress is procedurally and substantively barred.

■ A party may not raise an issue for the first time on appeal. *Gurary v. Winehouse*, 190 F.3d 37, 44 (2d Cir.1999). To the district court, Morrissey failed to present any claim of fraudulent inducement or duress to oppose GM's argument that Morrissey was precluded from relying on extrinsic evidence in support of her breach of contract and breach of implied covenant of good faith and fair dealing claims.

■ In any event, arguments of duress and fraudulent inducement are not cognizable based on these facts. GM merely requested that Morrissey sign documents recording an agreement on terms previously described in the April 2 letter, received by Morrissey two days before. She was thus aware before the closing that GM would make no concrete commitment about the GMC Truck franchise. With full knowledge, it was her prerogative to proceed.

In any event, Morrissey does not seek rescission and cannot use claims of duress and fraudulent inducement to selectively add or alter contract terms, while affirming the contract generally. *Soviero Bros. Contracting Corp. v. City of New York*, 286 A.D. 435, 142 N.Y.S.2d 508, 514 (App.Div. 1955) ("One elects either to continue with the contract fraudulently induced or to rescind it. If one elects to continue with it, one accepts all the burdens contained in the contract as well as the benefits.").

■ 2. To succeed on negligent misrepresentation or fraud claims a party must demonstrate that its reliance on another party's false statements was reasonable. *Stone v. Schulz*, 231 A.D.2d 707, 647 N.Y.S.2d 822, 823 (App.Div.1996).

■ Morrissey admits receiving notice by April 2 that GM was "not in a position to provide any assurances" concerning the GMC Truck franchise. Morrissey's reliance on GM's alleged oral promises, which directly contradict the terms of that letter and the terms of the April 4 written agreements, was unreasonable as a matter of law. *Robert J. McRell Assocs., Inc. v. Insurance Co. of North Am.*, 677 F.Supp. 721, 731 (S.D.N.Y.1987) ("[A]s a matter of law, [plaintiff is] not entitled to rely on a representation flatly contradicting the express terms" of the contract.); *see also Trifiro v. New York Life Ins. Co.*, 845 F.2d 30, 33–34 (1st Cir.1988) ("Explicit conflict engenders doubt, and to rely on a statement the veracity of which one should doubt is unreasonable.").

Morrissey argues that not all the terms in the written documents conflict with the alleged oral promises. According to her, the term "voluntarily terminate [the] Oldsmobile Division Franchise", as used in the April 4 letter, does not necessarily mean

she was expected to do so gratuitously, i.e. without the $500,000 payment. However, Morrissey's termination of RCM's Oldsmobile franchise would not be gratuitous even in the absence of the oral promises. After all, she was required to terminate only "upon the execution of a GMC Dealer Agreement"—a franchise agreement which Morrissey readily acknowledges would garner significantly greater profits and which Morrissey readily accepted in April, 1998.